## Owen *versus* Western Saving Fund.

1. In an action upon the case against a recorder of deeds, for damages suffered by reason of a false certificate of search given by the recorder to the plaintiff, in the absence of fraud, the Statute of Limitations begins to run from the time when the search was given, and not from the development of the damage.

2. It is immaterial that the party who received and paid for the search, had no knowledge of *its* falsity or cause for inquiry until more than six years after it was given. The cause of action, within the meaning of the Statute of Limitations, was the issuing the false certificate. The right of action accrued to the plaintiff as soon as it parted with its money on the faith of it, and from that period the statute began to run.

3. With reference to the Statute of Limitations, there is no distinction between torts arising from contracts and those which arise from official misfeasance.

January 7th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1880, No. 356.

Case, by the Western Saving Fund Society of Philadelphia against Joshua T. Owen. The *narr.* contained four counts, alleging substantially, a breach of duty, in that the defendant, recorder of deeds for the county of Philadelphia, did negligently certify, on November 4th 1867, that there were no unsatisfied mortgages of record in his office, on certain premises on Arch street, in said city, whereas there was a certain unsatisfied mortgage on said premises, of record, dated August 13th 1836, for $6000. That in 1878 the

[Owen *v.* Western Saving Fund.]

plaintiffs were damnified by reason thereof, and that they then for the first time discovered the falsity of the search. Pleas, not guilty, and *actio non accrevit infra sex' annos.* Replication and issue.

Afterwards, on January 7th 1880, the following case stated was agreed upon for the opinion of the court:

By indenture of mortgage, dated the 13th day of August 1836, one Jacob S. Rose, being the owner of the property hereinafter mentioned, conveyed to Brittain Cooper in mortgage, to secure the payment of $6000 in one year, with interest, certain premises described as being situated on the south side of Mulberry street, at the distance of one hundred and forty feet west of Eleventh street, in the city of Philadelphia, containing in front twenty feet, and extending in depth one hundred and forty-one feet. This mortgage was on the same day duly recorded at Philadelphia, in Mortgage Book S. H. F., No. 2, page 283, &c.; and by four assignments, duly recorded in the same office, the said mortgage subsequently became vested in Caspar W. Pennock.

By an ordinance of councils of the city of Philadelphia, approved the 8th day of December 1853, sect. 1, it is enacted, "That Cedar street, High street, Mulberry street and Sassafras street, shall be hereafter named and called respectively, South street, Market street, Arch street and Race street."

By deed dated January 2d 1855, duly recorded in the same office, the said premises became vested in Robert McGrath.

In the month of November 1867, the plaintiffs, being so requested by McGrath, agreed to loan him the sum of $12,000 on the security of a first mortgage, to be executed by him, of the premises.

The plaintiffs thereupon applied to the defendant, who was the recorder of deeds of Philadelphia county (and whose term extended from November 29th 1866, to November 29th 1870), to certify any unsatisfied mortgages upon the premises, given by the said Jacob S. Rose, from August 1st 1836, to September 1st 1844, the said premises being described as situate "on the south side of Arch street, one hundred and forty feet west of Eleventh street; containing in front twenty feet, and extending in depth one hundred and forty-one feet." Upon receipt of the fee demanded therefor, the defendant's clerk did, on the 4th of November 1867, certify under the defendant's seal of office, that there were no unsatisfied mortgages of the above premises.

On the faith of this certificate, the said sum of $12,000 was loaned to McGrath on the security of his supposed first mortgage, which was executed to the plaintiffs and duly recorded. The defendant's certificate was based on a search made from a private working index, compiled for the convenience of a former recorder of deeds, wherein the mortgagor's name appears as Jacob S. Ross.

[Owen *v.* Western Saving Fund.]

The official index, however, correctly discloses the mortgage by Jacob S. Rose.

The interest upon the plaintiffs' mortgage of $12,000, was regularly paid until the year 1876, when default being made, proceedings were instituted by the plaintiffs on the said mortgage, the premises exposed to sale, and purchased by them on the 3d of December 1877, for $5000, and a sheriff's deed therefor duly acknowledged and delivered.

After the plaintiffs had thus acquired title, they were notified by the holders of the Rose mortgage, that six months' interest thereon was unpaid. This was the first notice that the plaintiffs had of the existence of this prior mortgage. It subsequently appeared, that up to that time, interest had been regularly paid upon this Rose mortgage, and its existence concealed from the plaintiffs. Proceedings were then instituted on the same, against Jacob S. Rose, defendant, and the present plaintiffs terre-tenants, in which judgment was, on March 19th 1878, obtained for $5003.20, and a levari facias issued, under which the premises were to be sold on the 1st Monday of May 1878, and to avoid such sale, the present plaintiffs, on the 23d day of April 1878, paid to the attorney for the plaintiffs in such suit the sum of $5051.26.

On May 4th 1878, this writ was issued, and the defendant pleaded, inter alia, the Statute of Limitations.

If, upon the above facts, the court should be of opinion that the plaintiffs are entitled to recover in this form of action, then judgment to be entered in their favor, and damages assessed at $5051.26. Otherwise, judgment to be entered for the defendant. Either party to be at liberty to take a writ of error to the judgment of the court upon this case stated.

On March 20th 1880, the court below entered judgment for the plaintiffs, for $5051.26, Ludlow, P. J., delivering the following opinion:

" The facts of this cause may be briefly stated as follows: In 1867, the defendant, then recorder of deeds in this county, certified that certain premises were free from encumbrance. On the faith of this certificate, the plaintiff advanced a large sum of money upon mortgage of the premises specified in the search, and from 1867 to 1878 the owner of the property concealed from the plaintiff a knowledge of the existence of an encumbrance, of course prior in date to that of the plaintiff, and the discovery of this prior encumbrance was not made until 1878, when the holder of that mortgage foreclosed it.

" A loss has occurred, and the question now to be decided is this, can the recorder of deeds now be made liable for this mistake?

" This question can be answered, when we discover whether, in

1 OUTERBRIDGE—4

[Owen *v.* Western Saving Fund.]

an action on the case like this, the Statute of Limitations applies. If it does, the plaintiffs' cause is gone; if it does not, the defendant is liable.

"The language of the statute is very broad, and includes as well actions *upon the case* as actions of trespass, *quare clausum fregit, detinue, trover, replevin,* &c., &c.: 2 Purd. 930, 931. In the interpretation which we must place upon this statute, much depends upon the legal nature of the duty which devolves upon the recorder of deeds when he signs, seals and delivers his certificate of search. That duty has been clearly defined by AGNEW, J., in Commonwealth *v.* Harmer, 6 Phila. R. 90, where it was held, that the official responsibility of the officer rests 'not simply upon the evidence the certificate affords, but the duty it involves.' And again, 'the officer who makes the search stands, in reference to its correctness, in the attitude of an insurer, and his fee represents the premium.'

"As the recorder is a public official, he is charged with the performance of special duties, and this action is founded, not upon a breach of contract, but upon official misfeasance, and, therefore, upon a breach of official duty. It is unnecessary to encumber this opinion with a multitude of authorities, to prove that if any contractual relation existed between the parties, an action could not be sustained, because it has many times been decided that the statute begins to run from the date of the breach of contract, and if this were an action of .assumpsit, and not case, the same rule would apply.

"It has, however, been strenuously contended that the statute in terms includes actions on the case, and therefore the plaintiffs .must be defeated. It is admitted that a mere change in the *form* of the action will not defeat the statute. That was recently decided in Wickersham *v.* Lee, No. 2, 2 Norris 425, where it was held, 'that the *cause* of action, rather than the form, determines the applicability of the statute.'

"If this cause of action did not, as we think, arise from any breach of contract (see McCarahar *v.* Commonwealth, 5 W. & S. 25), then it arose either at the time the official duty was performed, or when the damage caused by the falsity of the certificate was developed. When the officer gave his certificate in 1867, it was well argued that no injury had accrued, and *non constat* that it ever would, for the owner might pay off the first mortgage, or the plaintiffs' encumbrance, or the present plaintiffs might assign their mortgage, or the property might pay every encumbrance in full. The very object of the certificate was, so to speak, to insure the plaintiff, and it would be manifestly unjust to hold the defendant harmless by reason of the application of a legal principle, which might destroy the very purpose for which the certificate had been given. It must also be remembered that this

[Owen v. Western Saving Fund.]

action is not for giving a false certificate, but for injury happening by reason of its falsity. When did this injury occur? Clearly when the fraud of the owner of the property was discovered, and not when the certificate was delivered. If we are correct in this view of the case, then the cause of this particular action did not arise until recently, and until the right of action is complete the statute does not begin to run: Wickersham v. Russell, 1 P. F. Smith 71.

"While the authorities here and elsewhere are somewhat conflicting, yet the principles announced by our Supreme Court, in Campbell v. Boggs, 12 Wright 524, and Hanna v. Holton, 28 P. F. Smith 334, clearly rule this cause. In Campbell v. Boggs, it was decided that 'actions of contract do not wait on consequences, but attach to the breach; but actions on the case, for consequential damages, are not to be brought until the damages are developed.' In Hanna v. Holton, the same principle was settled; by the kindness of counsel the paper-books, containing the able arguments submitted to the Supreme Court, have been handed to us, and have been attentively considered, and we are unable to distinguish this cause from that.

"The real injury in this case was not developed, and therefore was not complete, until within the time specified by the statute, and to plead it in bar of this action is to do a vain thing.

"Judgment for plaintiff on case stated, and damages assessed at $5051.26.'

The defendant took this writ of error, assigning for error the entry of judgment for plaintiff.

*George Northrop*, for plaintiff in error.—This is not a suit on the official bond of the recorder, but an action on the case, for a merely negligent act. It is admitted that there was no fraud by the recorder. The Statute of Limitations, by its terms, runs from the time when the *cause* of action was complete, and the vital question here is, when did the cause of action accrue? Our Statute of Limitations is identical with the English Statute of James; and the leading case of Howell v. Young, 5 B. & C. 259, which is on all fours with this case, settled the construction that, in the absence of fraud, the statute begins to run from the date of the negligence or other breach of duty, and not merely from the consequences or discovery of it. This case has been followed in the Pennsylvania and United States decisions: Wilcox v. Executors of Plummer. 4 Pet. 172; Miller v. Wilson, 12 Harris 121; Glenn v. Cuttle, 2 Grant 275; Campbell v. Boggs, 12 Wright 524; Barton v. Dickens, Id. 523; Marsteller v. Marsteller, 37 Leg. Int. 414; Moore v. Juvenal, 11 Norris 484. The statute runs from the time of the negligent act, though it was altogether problematical whether the plaintiff would ever sustain any damage: Wilcox v. Executors of

[Owen *v.* Western Saving Fund.]

Plummer, *supra.* In Hanna *v.* Holton, 28 P. F. Smith 334, relied on by the plaintiff and the court below, the decision was based on the fact that the defendant's duty was a *continuing* one, the neglect of which was not complete, and therefore the cause of action did not accrue until within six years of suit brought.

As to the form of action. Actions on the case are divided into two kinds: 1. Where either assumpsit or case would lie, in other words, where the action sounds in contract. 2. Where it sounds in tort, and either trespass or case would lie. In the first class, within which this case falls, there is no distinction in the law as to the running of the statute, except in cases of fraud. It is immaterial whether the action be assumpsit, debt or case, the statute is equally a bar, and begins to run from the same period, viz., the date of the negligent act. The plaintiff, by choosing a particular form of action, cannot take from the defendant his substantial protection of the statute. It is the *cause* of action, not the form, which determines the applicability of the statute: Downey *v.* Gerrard, 12 Harris 53; Wickersham *v.* Lee, No. 2, 2 Norris 425. The distinction attempted to be drawn between assumpsit and case, in respect to the statute, is without authority. The few dicta apparently in favor of it occur in cases of assumpsit. No precedent can be found that, in the absence of fraud, knowledge on the part of the plaintiff is necessary to set the Statute of Limitations running. To make it so would be to alter the statute.

The absence or prevention of knowledge on the part of the plaintiffs was caused solely by the fraud of a third party, whose act cannot alter the application of the law as to privies. The plaintiff has his action against the fraudulent third party, the recorder has not. The cause of action against the recorder was complete when the certificate was given.

*Wm. Henry Rawle*, for the defendant in error.—Statutes of limitation are to afford repose by barring stale claims, which the parties have had full opportunity to sue for, but have omitted so to do. Hence, until the cause of the particular action which the defendant sets up the statute to bar has arisen—until the right is complete to institute that action—the statute does not begin to run: Cooley on Constitutional Limitations *336; Wickersham *v.* Russell, 1 P. F. Smith 71, 74; Marsteller *v.* Marsteller, 37 Leg. Int. 414.

This action is for an injury happening in 1878, by reason of a false certificate of search given in 1867 by the defendant in his official capacity. It is not for breach of contract, nor for giving a false certificate. The very object of the certificate was to relieve the party who received and paid for it from the duty of inquiry, hence the plaintiffs, in relying on it, were guilty of no laches. Until 1878, they not only had no knowledge of its falsity, but

[Owen v. Western Saving Fund.]

were in fact not injured. *Non constat* that they ever would be injured, for (1.) The owner might pay off the first mortgage; (2.) He might pay off our mortgage; (3.) We might assign our mortgage; or, (4.) The property might bring enough at sheriff's sale to cover both mortgages. Until the injury, the defendant was not liable for damages, and until the knowledge we had no right of action. Hence, the action is not for *giving* a false certificate, but for the injury caused by its falsity. The recorder's *official duty* is to give true searches for a stipulated fee; his bond is, by the Act of 1775, to indemnify parties who shall be damnified; he stands, by effect of the statute, in the attitude of insurer, not a mere party to a private contract entered into at his option; and he is not liable in damages until loss occurs.

The distinction is marked between torts arising out of breach of contract between private parties, and those arising from official misfeasance. In the former, full prospective damages can be recovered immediately from the breach; in the latter, the statutory cause of action occurs when the damage is developed, and the official is only liable for actual damages suffered. If a sheriff falsely returns a summons *nihil habet*, and the defendant voluntarily appears, there is a breach of duty, but no right of action for the false return. The attorney cases, relied on by plaintiff in error, were in assumpsit, and are not applicable to actions in case against public officials; moreover, they were decided on the ground of lack of diligence in the client, in not inquiring, &c.: Hanna v. Holton, 28 P. F. Smith 334; Kimball v. Connolly, 3 Keyes 57; Planck v. Anderson, 5 Term Rep. 37; Williams v. Mostyn, 4 Mees. & Wells. 145; Bank v. Waterman, 26 Conn. 324; McCaraher v. Commonwealth, 5 W. & S. 25; Ziegler v. Commonwealth, 2 Jones 227; Commonwealth v. Harmer, 6 Phila. R. 90; Siewers v. Commonwealth, 6 W. N. C. 17; Rhines v. Evans, 16 P. F. Smith 194; Howell v. Young, 5 Barn. & Cres. 259; Lytle v. Mehaffy, 8 Watts 267; Angell on Limitations, § 129; Harriman v. Wilkins, 20 Me. 97; Newbert v. Cunningham, 50 Id. 231.

In actions upon the case for consequential injuries, the Statute of Limitations only commences to run from the time the damage is developed: Hanna v. Holton, 28 P. F. Smith 334; Campbell v. Boggs, 12 Wright 524; Wheatly v. Baugh, 1 Casey 534; Whitehouse v. Fellowes, 10 Com. Bench, N. S., 765; Ludlow v. Hudson River Co., 6 Lansing 133; Hancock v. Wilhoite, 1 Duvall 313; Polly v. McCall, 37 Ala. 20; Thornton v. Turner, 11 Minn. 336; Foster v. Marsh, 25 Iowa 300; Angell on Limitations, § 304.

The result of a different view being taken by this court will be to require mortgagees to renew their searches every six years, and the profession has never deemed that necessary since the passage of the recording act.

[Owen *v.* Western Saving Fund.]

Mr. Justice GORDON delivered the opinion of the court, January 31st 1881.

This case may be certainly and readily determined by mere attention to, and following of the language of the Act of March 27th 1713, which prescribes, inter alia, "That all actions of account and upon the case shall be commenced, and sued within six years next after the cause of such actions and suits, and not after." The action now in hand is "upon the case," brought by the plaintiff against the defendant, for the recovery of damages alleged to have resulted from a false certificate of search issued by him, when recorder of deeds of the county of Philadelphia, to the plaintiff.

As fraud is not charged against the defendant, the case is not complicated by that element, and the action is founded on negligence alone. Under the statute then, the question is, What was the cause of action, and when did it arise? Undoubtedly the cause was the issuing the false certificate, and the right of action accrued to the plaintiff just as soon as it parted with its money on the faith it, and, as a consequence, from that period, the statute began to run. But, answers the counsel for the plaintiff, *non constat*, that there was at that time any special damage. This may be true; but special damage is a result, not a cause, and, as was said in Howell *v.* Young, 5 B. & C. 259, the gist of the action being the misconduct of the defendant, omitting wholly the allegation of special damage, the plaintiff would, nevertheless, be entitled to nominal damages. And, in this same case, it was held, that special damages, resulting from a breach of duty, do not constitute a fresh ground of action, but are merely the measure of the injury resulting from the original cause. This same doctrine was held in Wilcox *v.* Plummer's Ex'rs., 4 Pet. 172, which was an action for a loss resulting from the neglect or unskilful conduct of an attorney; also in the Bank of Utica *v.* Childs, 6 Cowen 245, where the action was founded on the default of a notary, in not giving notice of the non-payment of a promissory note; in Miller *v.* Adams, 16 Mass. 456, where the suit was against a deputy-sheriff, for a breach of official duty in making a defective return to an original writ. In our own court, we have this very doctrine re-stated by our brother, Mr. Justice STERRETT, only about one year ago, in Moore *v.* Juvenal, 11 Norris 484, which was a suit brought to recover damages, arising from the negligence of an attorney in prosecuting a claim. To the same purpose are Campbell's Adm'rs *v.* Boggs, 12 Wright 524; Downing *v.* Gerrard, and Miller *v.* Wilson, 12 Harris 52, 114. All these authorities, and many more which might be cited, only serve to illustrate that which the statute of itself makes plain enough; namely, that the commencement of the limitation is contemporaneous with the origin of the cause of action.

And we see also, from the cases cited, that the distinction which the counsel for the plaintiff has attempted to draw, between

[Owen *v.* Western Saving Fund.]

torts arising from contracts and those which arise from official misfeasance, cannot be sustained. Such a distinction is not found in the statute, and it is clearly opposed to reason; for why should a duty imposed by the legislature be obligatory, rather than one which is voluntarily assumed? Nay, a man might the rather be excused from the performance of an obligation forced upon him, than from one which, of his own will, he took upon himself. Indeed, the two become equal, and all distinction disappears, only, when we consider that the statutory duty is assumed as part of the office which the incumbent undertakes to fulfil. Moreover, the officer having thus assumed the duty, and being paid ·therefor by the party who requires its performance, the transaction, to all intents and purposes, becomes a personal contract, as much so as though it were wholly voluntary, and not statutory.

> The judgment of the court below is now reversed and set aside, and it is ordered that judgment be entered, on the case stated, for the defendant, with costs.