## NEW AMSTERDAM CASUALTY CO. v. BAKER.

### Civil Action No. 3318.

District Court, D. Maryland.

Dec. 30, 1947.

Austin F. Canfield, of Washington, D. C., and George E. Kieffner, of Baltimore, Md., for plaintiff.

Joseph Bernstein and Roszel C. Thomsen, both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The defendant has filed a motion for summary judgment on the ground that the action is barred by limitations. The jurisdiction of the court is based solely on diverse citizenship. The law of the forum governs with respect to the period of limitations, which, in this State, is three years. The question in the case, however, is whether the three-year period began to run more than three years before filing the suit, in this case.

The motion is based on the pleadings without additional affidavits or further facts. The facts stated in the pleadings may be briefly stated. On August 19, 1941, the defendant sold ten (10) dozen Chenille robes to Lansburgh & Bros. owning and operating a department store in the District of Columbia. The contract of sale was made in New York City. The parties were aware that the purchase was made for purposes of re-sale. On January 3, 1942, Lansburgh sold one of the robes to one Doris E. Deffebach without any express warranty. Subsequently on January 17, 1942, while this ultimate purchaser was wearing the robe in her home a spark flew from a

lighted match against the robe causing it to be immediately ignited, and causing severe burns to her arms and body. The ignition of the robe was alleged to have been due to the type of construction of the fabric.

Thereupon Doris E. Deffebach brought suit against Lansburgh in the United States District Court for the District of Columbia. At the trial of the case the court directed a verdict in favor of Lansburgh, but on appeal this was reversed by the United States Court of Appeals for the District of Columbia. The court decided as a matter of law that if the robe caught fire and burned, as the witness testified, there was a breach of Lansburgh's implied warranty of fitness. Deffebach v. Lansburgh & Bro., 80 U.S. App.D.C. 185, 150 F.2d 591, 168 A.L.R. 1052 (June 29, 1945). A petition for certiorari was denied by the Supreme Court. (Nov. 19, 1945) 326 U.S. 772, 66 S.Ct. 177, 90 L.Ed. 466. Baker, the defendant in this case, was duly and promptly advised by Lansburgh of the pendency of the litigation in the District of Columbia and invited to participate in the defense of the suit; but failed or refused to do so.

On February 27, 1946 that case was compromised and settled by the parties in consideration of the payment of $13,000, which was paid to the plaintiff Deffebach by the New Amsterdam Casualty Company, Lansburgh's insurer. This suit was instituted by the insurer as subrogee of Lansburgh on December 12, 1946.

It will be noted that the original sale by Baker to Lansburgh and the re-sale by Lansburgh to Deffebach and the time of the alleged discovery of the defect in the garment by reason of the injury to the latter, all occurred more than three years prior to the institution of this suit. The only event in the sequence of facts occurring within the three-year period was the compromise settlement by Lansburgh with Deffebach and the consequent payment by the insurer. The question in the case, therefore, becomes limited to the inquiry, whether the running of the period of limitations was postponed until the acknowledgment of. liability by Lansburgh and the consequent determination of the amount of damages by the insured; or, in other words, when did the statute of limitations begin to run. in this case. The defense of the statute is set up in the defendant's answer, and the parties have raised no question of procedure in presenting the point for determination by the court on the motion for summary judgment.

As jurisdiction of the court in this case is dependent solely upon diverse citizenship, the Maryland law must be applied. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. It is clear by the Maryland statute, Md. Code of 1939, Art. 57, § 1 that the applicable period is three years. But, as already stated, the question in the case is, when did this period begin to run. Counsel have not been able to find, nor do I know of, any Maryland decision on this latter point in its application to the facts of this case. Compare Glenn v. Williams, 60 Md. 93, 122, cited with approval in Hawkins v. Glenn, 131 U.S. 319, 330, 9 S.Ct. 739, 33 L. Ed. 184. See also Crofoot v. Thatcher, 19 Utah 212, 57 P. 171, 75 Am.St.Rep. 725; Great Western Telegraph Co. v. Purdy, 162 U.S. 329, 16 S.Ct. 810, 40 L.Ed. 986.

The complaint alleges that the contract was made in New York and it was stated by counsel at the hearing, without contradiction, that while the defendant's manufacturing plant was in Baltimore, he had a sales office in New York City. Possibly the delivery of the garments may have been made either in Baltimore or in the District of Columbia but this does not appear as a fact now before the court. This being so, counsel for the defendant contends that the time for the beginning of the running of the statute should be determined by the place where the contract was made, that is, New York. Or, if it be inferred that delivery was possibly made in Washington, then by the law of the District of Columbia, or at least by the general law upon the subject which, it is argued, should be applied as the probable law of Maryland in the absence of any prior Maryland State decision upon the point. The Maryland rule as to conflict of laws should also be applied if there were any decision on the point; but apparently there is none. Klaxon Co. v. Stentor Elec. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Guaranty

Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231. In the absence of any applicable Maryland decision the question must be resolved on the basis of general principles of law which presumably would be applied by the Maryland Court of Appeals.

Counsel for the defendant argues that "When limitations starts to run is ordinarily determined by the law of the place of the performance of the contract. Beale, Conflict of Laws, sec. 370(1), p. 1272". As the pleadings allege no other place of performance than New York where the contract was made, the conclusion is urged that the beginning of the limitations period must be determined in this case by the law of New York State. The only case that seems to be "on all fours" with the instant case is Liberty Mut. Ins. Co. v. Sheila-Lynn, Inc., 185 Misc. 689, 57 N.Y.S.2d 707, affirmed without opinion, 270 App.Div. 835, 61 N.Y.S.2d 373, in which it was held that, in a suit on an implied warranty (which is the theory here of the complaint) limitations begins to run at the time of the sale. See also Williston on Sales, Vol. 1, 2d.Ed. s. 212(a); Mt. Forest Fur Farms v. Farnsworth, 6 Cir., 92 F.2d 342. Other authorities adopt the rule that the statute begins to run, not upon the making of the contract but upon delivery of the merchandise. E. O. Painter Fertilizer Co. v. Kil-Tone Co., 105 N.J.L. 109, 143 A. 332; Battley v. Faulkner, 3 Barn & Ald. 288, 106 Eng. Reprint, 668; Woodland Oil Co. v. A. M. Byers & Co., 223 Pa. 241, 72 A. 518, 132 Am.St.Rep. 737. See also concurring opinion in Liberty Mut. Ins. Co. v. Sheila-Lynn., Inc., supra, 57 N.Y.S.2d at page 712. In P. H. Sheely Co. v. Eastern Importing & Mfg. Co., 44 App.D.C. 107, L.R.A.1916F, 810, and John S. Sills & Sons v. Bridgeton Condensed Milk Co., 3 Cir., 43 F.2d 72, the federal appellate courts held that limitations runs from the time the alleged breach of warranty was discovered or should have been discovered by the retailer. I am disposed to adopt the latter view as the preferable rule in a case of this kind.

■ But, however that may be, in this case whether the statute began to run at the time of making the contract or delivery of the goods or discovery of the defect is really unimportant because all of these events were beyond and none of them within the three-year period. The only escape for the plaintiff would, therefore, seem to be limited to the establishment of the proposition that in such a case the statute does not begin to run until the purchaser buying on an implied warranty of fitness not only discovers the defect but determines the amount of damages occasioned thereby. However reasonable this latter proposition might be considered, if the general law had not fairly well crystallized heretofore, it is necessary in the present case to determine the matter on the basis of what has been decided rather than upon what might be decided if the matter were an original one. In the absence of any applicable decision of the Maryland Court of Appeals, I must apply the rule which seems highly probable would be applied by that court.

I can find no legal authority to support the possible principle that limitations with respect to breach of implied warranty begins to run only after the ascertainment of the amount of the damages. In a somewhat analogous situation it was early held by the Supreme Court of the United States that the statute began to run upon the breach of the duty and its running was not postponed until the ascertainment of the amount of the damage. Wilcox v. Plummer, 4 Pet. 172, 29 U.S. 172, 182, 7 L.Ed. 821; Amy v. Dubuque, 98 U.S. 470, 474, 25 L.Ed. 228; see also Pickett v. Aglinsky, 4 Cir., 110 F.2d 628, 639. The decision was based largely upon earlier English common law cases. It seems highly probable to me that in Maryland, a so-called still largely common law State, where the English decisions have often been given great weight, the Court of Appeals of Maryland would reach the same conclusion.

■ It will have been noted that this suit is brought by the insurer as subrogee without including Lansburgh the insured, the original purchaser from the defendant, as a party to the case. No point has been made by the defendant of the failure to include Lansburgh as a party plaintiff. It would have been quite in accordance with the usual Maryland practice to have brought the suit in the name of Lansburgh to the use of the insurer. The defendant

makes no point about this, being seemingly satisfied that the naming of the plaintiff as the real party in interest is authorized by rule 17 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Apart from this purely procedural point it is clear enough as a matter of substantive law that the insurer as plaintiff here, basing its rights only as a subrogee, can have no greater rights than Lansburgh its insured. The question of limitations must, therefore, be determined as if the suit had been by Lansburgh directly against the defendant. Counsel for the plaintiff submits the general argument to the effect that limitations ordinarily does not begin to run until there is an existing cause of action. It is true, of course, in this case that the insurer had no cause of action until it paid the loss (within the three year period), but it is likewise clear that it is suing only as a subrogee of Lansburgh who did have a cause of action at least when the defect was first discovered which, however, was beyond the three-year period. It is plausibly argued that while Lansburgh theoretically may have had a cause of action when the defect was first discovered, it was not practicable for him to bring suit against Baker until the fact both of the breach of warranty with respect to the nature of the goods and the amount of the damages therefor had been established. And therefore the realistic view is urged that in a case of this nature the beginning of limitations should be postponed until the ascertainment of the amount of the damages. And in this connection it is further argued that Baker, being informed of the pending litigation and offered an opportunity to assist in the defense, has not really been prejudiced by the delay in the suit. Or, in other words, that Lansburgh and its subrogee, the present plaintiff, had not been guilty of laches. But however plausible this argument may seem, I can find no established principle of the law of limitations to support it; and the case must be decided on the law as it is and not on what the court may think it should be.

For these reasons I conclude that the motion for summary judgment must be granted. Counsel may submit the appropriate order in due course.