William T. SMITH, Ida B. Smith, and William G. Smith, partners, trading and doing business under the name of Smith's Frozen Food Bank, Plaintiffs,

v.

AMERICAN FLANGE AND MANUFACTURING CO., Inc., and C. T. Hogan & Co., Inc., Defendants.

United States District Court
S. D. New York.

March 30, 1956.

A. Harold Frost, New York City, for plaintiff, Bernard Jenkin, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant C. T. Hogan & Co., Inc., Joseph S. Kelly, New York City, of counsel.

Thomas P. Curtin, New York City, for defendant American Flange & Manufacturing Co., Inc.

WEINFELD, District Judge.

This is a diversity suit brought by citizens of the State of Pennsylvania against two New York corporations, American Flange & Manufacturing Company, Inc. (hereinafter called "American") and C. T. Hogan & Company, Inc. (hereinafter called "Hogan"). The defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that

the action is barred by the applicable Statute of Limitations. The parties are in agreement that the essential facts upon which this issue depends are not in dispute.

Plaintiffs are in the frozen food locker business. Their action is predicated upon a claim of a breach of implied warranty that Ferro-Therm Steel Insulation, a product manufactured by American and distributed by the co-defendant Hogan, would maintain certain temperatures required by plaintiffs in the operation of their business.[1] There was no privity of contract between the defendants (the manufacturer and its distributor) and the plaintiffs. The claim here asserted appears to rest upon advertisements and literature pertaining to Ferro-Therm Steel Insulation issued by the defendant American and distributed nationally by the co-defendant Hogan.[2]

The insulation was sold to and installed for plaintiffs by Fabricated Products Company, a Pennsylvania corporation (hereinafter called Fabricated), not a defendant in this action, under the following circumstances: In July, 1946 plaintiffs and Fabricated entered into an agreement whereby Fabricated undertook to furnish and install a frozen food unit for plaintiffs. Fabricated's proposal which led to the agreement noted that its quotation was "based upon the attached rough sketch and is designed to hold the temperature shown in accordance with the recommendation of the American Flange & Manufacturing Company." This called for specified temperatures in the locker, chill and quick-freeze rooms. Ferro-Therm Steel Insulation was used in the installation. The material was sold by American to Hogan which in turn sold it to Fabricated. The installation was made by the latter based upon plans and specifications

furnished to it by Hogan and prepared and supplied by American. The job was completed on or about December 1, 1946 when plaintiffs began operation of the freezing unit.

In March, 1947, plaintiffs noted condensation of water on the walls of the plant and experienced difficulty in holding the locker and quick-freeze rooms at the required temperatures. Thereupon they notified Fabricated which undertook to make certain adjustments to correct the condition. These consisted of the installation of additional layers of Ferro-Therm Steel Insulation and the replacement of certain aluminum sheets. According to the complaint, the adjustments were made by Fabricated in September and October, 1947 and it is stated they were so made upon the advice of the defendants. Notwithstanding the adjustments the locker and quick-freeze rooms still continued to gather condensation and to lose temperature during the spring of 1948. The complaint alleges that "from March, 1948 until March, 1950, the condition grew worse, and the plaintiffs were then required to abandon their frozen food locker room and quick-freeze room and to erect, build and insulate new quarters * * *."

This action was commenced against the defendants on August 19, 1953, almost six years and nine months after completion of the job by Fabricated, and accordingly the defendants urge that the suit is time barred.

■■ Since this is a diversity suit the applicable law is that which would be applied by the courts of New York State.[3] And since the contract was made and performed in Pennsylvania the law of that state would govern on the substantive issues. New York would also look to Pennsylvania, where the cause of action arose, on the question of the Statute of Limitations.[4]

---

1. The defendants have confined their present motion solely to the issue of the Statute of Limitations.

2. Cf. Gaffney v. Unit Crane & Shovel Corp., Del.Super., 117 A.2d 237.

3. Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.

Ed. 2079; Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Rowe v. Pennsylvania Greyhound Lines, Inc., 2 Cir., 231 F.2d 922.

4. New York Civil Practice Act, § 13.

The parties are in agreement that under Pennsylvania law the period of limitation in an action to recover upon a breach of an implied warranty is six years. The crucial question is when did the cause of action accrue and start the Statute of Limitations running. The defendants contend that it was on December 1, 1946, the date when the installation was completed and final delivery made of the insulation,[5] but in any event not later than March, 1947 when plaintiffs discovered the installation was not holding the specified temperatures. The plaintiffs urge that the warranty was prospective, or a continuing one, and hence the statute did not begin to run until all efforts to correct the defective condition were terminated, which they assert was March, 1948.

If defendants' alternative positions find support in Pennsylvania law it is unnecessary to make a precise determination as to whether the statute began to run at the time of sale and delivery of the insulation, December 1, 1946, or when plaintiffs discovered the claimed defect, March 1, 1947, because either event occurred more than six years prior to the commencement of this action.

I am persuaded that the defendants' contention must be upheld.

A leading Pennsylvania case on the issue of the accrual date of a cause of action for breach of implied warranty is Woodland Oil Co. v. A. M. Byers & Co., 223 Pa. 241, 72 A. 518, 519, frequently cited in other jurisdictions including our own Court of Appeals.[6] The action had been commenced to recover for breach of warranty of quality and fitness for use of certain casings. The defense of the statute of limitations was raised on the vendor's plea that "the plaintiff was at liberty to sue * * * as soon as the defective pipe was delivered, or at least as soon as it was discovered, which was shortly afterwards". The purchaser, on the other hand, contended that no right of action accrued until injury resulted in the recovery of damages against it. The Pennsylvania Supreme Court concluded "without hesitation * * * that the cause of action must be deemed to have accrued when the defective casing was delivered * * *."

In Fred Wolstenholme, Inc., v. Jos. Randell & Bro., Inc., 295 Pa. 131, 144 A. 909, the Court decided that a retailer who had been sued for the price of goods was entitled to recoupment from his seller for probable damages based upon breach of warranty even though the retailer had not yet been held liable to his sub-vendee. The effect of this holding was that the cause of action for breach of warranty accrued upon the sale of the merchandise. Such was the interpretation by the New York courts of the Wolstenholme ruling.[7]

It should be noted that the proximity of the dates of delivery of the merchandise and discovery of the alleged defect in the Woodland Oil Co. case suggests that the Pennsylvania courts may even hold that the date of discovery commences the running of the statute, but as already noted, it would not matter in this action.[8]

Counsel for the plaintiffs has not cited, nor has the Court's research disclosed, any Pennsylvania authority to

5. With the consent of the parties, December 1, 1946 is treated as the date of the sale and the date of delivery; further, that the sale by American to Hogan and by Hogan to Fabricated all occurred on December 1, 1946, when Fabricated completed the installation.

6. Corporation of Royal Exchange Assur. v. United States, 2 Cir., 75 F.2d 478; New Amsterdam Cas. Co. v. Baker, D.C. D.Md., 74 F.Supp. 809, 811; Gaffney v. Unit Crane & Shovel Corp., Del.Super.,

117 A.2d 237, 239; Sullivan v. Stout, 120 N.J.L. 304, 199 A. 1, 4, 118 A.L.R. 211.

7. Liberty Mut. Ins. Co. v. Sheila-Lynn, Inc., 185 Misc. 689, 57 N.Y.S.2d 707, affirmed 270 App.Div. 835, 61 N.Y.S.2d 373.

8. Cf. Lewey v. H. C. Frick Coke Co., 166 Pa. 536, 31 A. 261, 28 L.R.A. 283. See also New Amsterdam Cas. Co. v. Baker, D.C.D.Md., 74 F.Supp. 809, 811; John S. Sills & Sons v. Bridgeton Condensed Milk Co., 3 Cir., 43 F.2d 72.

support the contention that the limitation period commenced to run only after the termination of efforts to remedy the claimed defect.[9]

Assuming arguendo, as plaintiffs contend, that the warranty, so far as these defendants are concerned, was prospective and that some time was required to test the freezing plant and observe its operation, we reach the same conclusion. The fact is that such opportunity was fully afforded plaintiffs from December 1, 1946 onward. They knew in March, 1947 that the plant was not functioning in accordance with the warranty. Their position is emphasized by their acknowledgement "that from the Spring of 1947 up to the time the locker plant was abandoned, the insulation as installed originally by Fabricated Products Company, at the recommendation of the defendant American Flange Company, said insulation being Ferro-Therm Insulation, was unsatisfactory and did not perform the work intended, was not as represented, and was unsatisfactory for the purposes required by the plaintiffs herein."[10]

The fact that Fabricated attempted in September and October, 1947 to remedy the defect upon the advice of the defendants does not toll the statute. At the time of these adjustments the warranty had already been broken and such efforts by the plaintiffs' immediate vendor, Fabricated, did not create any new warranty on the part of the defendants herein so as to start the statute running anew.[11] Plaintiffs concede that no contract was ever entered into between them and American, the manufacturer, with reference to the installation of the material. Their answers to various requests to admit establish that the essence of their claim is a deficiency of the insulating material used by the contractor Fabricated and not the manner of installation.[12] Under these circumstances unilateral action by Fabricated cannot serve as the basis for extending the accrual date of such action, if any, as plaintiffs may have against American and Hogan for breach of an implied warranty.

Heath v. Moncrieff Furnace Co., 200 N.C. 377, 156 S.E. 920, 75 A.L.R. 1082, the facts of which parallel the instant case and upon which plaintiffs so heavily rely, is distinguishable. There the Court did hold that the cause of action accrued only after attempts had been made to correct the defective condition and when it was finally determined that the plant would not heat the premises as warranted by the original contract. But in that case there was privity of contract between the vendor and the vendee—a circumstance not present here—and the vendor, the defendant, attempted to remedy the claimed defect and upon completion of his efforts expressly ratified the warranty contained in the original agreement. Moreover, there is no indication that the Pennsylvania courts would accept the holding of the Heath case.

The defendants' motion for summary judgment on the ground that the action is barred by the Statute of Limitations is granted.

Settle order on notice.

9. Plaintiffs' original contention that their cause of action did not accrue until March, 1950 when they "sustained their damage by an abandonment of the plant" appears to have been withdrawn. In any event in Woodland Oil Co. v. A. M. Byers & Co., 223 Pa. 241, 72 A. 518, 520, the Pennsylvania Supreme Court reiterated prior holdings "that the statute runs from the time the cause of action accrues, without regard to the time when actual consequential damage is suffered." Cf. Owen v. Western Saving Fund, 97 Pa. 47, 54.

10. Plaintiffs' Answer to Request for Admissions No. 17.

11. Cf. Gaffney v. Unit Crane & Shovel Corp., Del.Super., 117 A.2d 237.

12. Plaintiffs' Answers to Requests for Admissions Nos. 14, 15, 16 and 17.