## Skyline Builders, Inc. v. Kellar

*Edward C. McCardle, Charles J. Hair* and *Snyder, Doll, Schantz & King,* for plaintiff.

*Norman Seidel,* for defendant.

*Richard F. Stevens* and *Butz, Hudders & Tallman,* for additional defendant.

WIEAND, J., September 15, 1970.—If a lawyer who is employed to examine the title to real estate makes an erroneous report that title is good and marketable, when does the *statute of limitations* begin to run on his client's cause of action? This is the question posed by motions for judgment on the pleadings filed by defendant, James G. Kellar, and additional defendant, Geza P. Bolez, Jr.

The pleadings establish that James G. Kellar, a member of the bar of Lehigh County and defendant in this action, was employed by Skyline Builders, Inc., plaintiff, to examine the title to a tract of real estate which Skyline intended to purchase and develop in the City of Allentown. Kellar employed Geza P. Bolez, Jr., another attorney and additional defendant herein, to search and abstract the title. On April 9, 1959, on the strength of a report that title was good and marketable, Skyline accepted title. In April 1967, after subdivision and improvement of the tract had been commenced, it was discovered that title to a substantial part of the tract was not good but was, in fact, held by another owner. Discovery of the title defect before April 1967 was prevented, it is alleged, by the reliance which plaintiff placed upon defendant's assurance that title was good and marketable. Actual fraud, however, is not alleged.

In Pennsylvania, the default or malpractice of an attorney has been treated as a breach of contract between attorney and client: Campbell's Adminis-

trator v. Boggs, 48 Pa. 524; Rhines' Administrators v. Evans, 66 Pa. 192; Huffman Estate (No. 3), 349 Pa. 59. The period of limitations to be applied to such actions is six years: Act of March 27, 1713, 1 Sm. L. 76, 12 PS §31.

Early Pennsylvania cases involving malpractice of title examiners held that in the absence of fraud the cause of action accrued and the statute of limitations began to run on the day the erroneous title report was made and not on the date the error was discovered or when the damages resulting were finally determined: Owen v. Western Saving Fund, 97 Pa. 47; Lawall v. Groman, 180 Pa. 532; Bodine v. Wayne Title & Trust Company, 33 Pa. Superior Ct. 68. See also 18 A.L.R. 3d 978, 1014. Plaintiff argues that such a rule is unreasonable and has been modified by later decisions. We agree.

In Schwab v. Cornell, 306 Pa. 536, a conveyancer employed to secure clear title to real estate informed his client by letter that the client had a clear title, although the conveyancer knew, or should have known, that the taxes were unpaid for a prior year. The client became aware of these unpaid taxes only when he received notice that his property was being sold for taxes. He brought an action for damages against the conveyancer, who defended on the grounds that the action was barred by the statute of limitations. At pages 539 and 540, the court said:

"The statute provides that such actions as the present shall be brought 'within six years next after the cause of such actions or suit, and not after' . . . If the circumstances are such that a man's eyes should have been open to what is occurring, then the statute begins to run from the time when he could have seen, but if by concealment, through fraud or otherwise, a screen has been erected by his adversary which effectually obscures the view of what has happened,

the statute remains quiescent until actual knowledge arises . . . In the instant case, we regard the letter of defendant, in which he informed the plaintiff that his title was 'entirely clear of liens,' as such an actual misrepresentation of the true situation as prevented the running of the statute until plaintiff discovered by notice of the sale of his property what was the actual situation,—that his title was not clear as defendant represented it to be, but encumbered."

Counsel have called our attention to no later Pennsylvania cases which have considered the running of the statute of limitations against lawyers and title examiners, and our own research has disclosed none. However, the appellate courts of this State have considered the running of the statute of limitations in malpractice actions against both physicians and architects and have achieved a uniform result.

In Ayers v. Morgan, 397 Pa. 282, a surgeon had left a sponge in the body of his patient. The court held that the applicable two-year statute of limitations did not begin to run until the patient learned, or by the exercise of reasonable diligence could have learned, of the presence of the sponge within his body. At pages 284 and 285, the court said:

"This statute, as all statutes, of course, must be read in the light of reason and common sense. In its application to a given set of circumstances, it must not be made to produce something which the Legislature, as a reasonably-minded body, could never have intended. The Statutory Construction Act of May 28, 1937, P. L. 1019, Article IV, §52, 46 PS §552, states that in ascertaining the intention of the legislature the courts may be guided by the presumption that 'The legislature does not intend a result that is absurd, impossible of execution, or unreasonable.'

"With so wholesomely logical and intelligent a standard of interpretation, it would be illogical and un-

intelligent to say that a person who does not know, and cannot know, for example, that a surgeon has negligently left a rubber tube in his body, would be denied damages because his claim for damages was filed, due to delay in learning of the presence of the tube, more than two years after the operation."

In Med-Mar, Inc. v. Dilworth, 214 Pa. Superior Ct. 402, a latent defect in a roof required a determination of the time when the applicable six-year statute of limitations began to run against an architect whose negligence was responsible for the defect and resulting damage. Writing for the court, Judge Cercone reviewed the applicable law, beginning at page 405, and said:

"The general rule is that the Statute begins to run from the time the act is done, but this is not of universal application. The mischief the Statute intends to remedy is the delay in the assertion of a legal right which it is practical to assert. The limitation of action prevents the starting of a lawsuit at a time when it is impractical or impossible for the parties to present themselves in court with the necessary factual and legal implementations which were at one time available to them. In other words, it is intended to preclude one who has slumbered for six years during which time legal process was within his reach.

"The legal principles in this field, both general and particular, are succinctly stated in the case of Schaffer v. Larzelere, 410 Pa. 402 (1963): 'Under the law of Pennsylvania, it is the duty of one asserting a cause of action against another to use all reasonable diligence to properly inform himself of the facts and . . . to institute the suit within the prescribed statutory period: Patton v. Commonwealth Trust Co., 276 Pa. 95, 119 A. 834 (1923); Turtzo v. Boyer, 370 Pa. 526, 88 A. 2d 884 (1952). Mere mistake, misunderstanding or lack of knowledge is not sufficient to toll

the running of the statute: Ridgeway's Account, 206 Pa. 587, 56 A. 25 (1903); McEnery v. Metropolitan Life Ins. Co., 50 Pa. D. & C. 395 (1944). If, however, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the limitation of the action: Plazak v. Allegheny Steel Company, 324 Pa. 422, 188 A. 130 (1936) and Deemer v. Weaver, 324 Pa. 85, 187 A. 215 (1936). Likewise, if the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitation does not begin to run until discovery of the injury is reasonably possible. See, Gotshall v. Langdon & Co., 16 Pa. Superior Ct. 158 (1901); Lewey v. Fricke Coke Co., 166 Pa. 536, 31 A. 261 (1895); Ayers v. Morgan, 397 Pa. 282, 154 A. 2d 788 (1959); Smith v. Bell Telephone Co. of Pa., 397 Pa. 134, 153 A. 2d 477 (1959).'

"Or as stated by this court in Scranton Gas & Water Co. v. Iron & Coal Company, 167 Pa. 136 (1895), quoted with approval in Ayers v. Morgan, 397 Pa. 282 (1959): 'The question in any given case is not what did the plaintiff know of the injury done him, but what might he have known by the use of the means of information within his reach with the vigilance the law requires of him?'

"Therefore, where knowledge is impossible because of the laws of nature, or because of the actual fraud or concealment of the wrongdoer, *or where it is impractical to impose on one who has been wronged the duty to explore and ferret out the undetectable act of the wrongdoer, the statute should begin to run from the time discovery of the injury is made. . . .*" (Italics supplied.)

The anomaly inherent in a strict application of the statute of limitations in cases of legal malpractice is

readily apparent. In many instances, the client will be unaware of the attorney's negligence until loss or injury is actually threatened. If this negligence is discovered for the first time after the expiration of the period of limitation, a strict application of the statute will bar any action. To deny a person a right before he can reasonably be expected to know that he has such a right is unreasonable and unjust. Moreover, to impose upon the client the duty of ferreting out his lawyer's mistakes, a burden which in the usual situation can be met only by employing a second attorney, is to discourage the trust and confidence which are essential to a sound attorney-client relationship.

Defendant suggests that a different rule should be applied when the limitation is six years than when it is only two years. If the shorter two-year limitation requires extension upon occasion to avoid injustice, he argues, the longer six-year period affords ample opportunity to the plaintiff to institute suit for legal malpractice and should be strictly applied. Because of an attorney's unusual vulnerability to malpractice claims, he concludes, the statute of limitations reflects a sound social policy of limiting the potential liability of an attorney. It serves the purpose of removing the threat of suit after a reasonable time.

We perceive no reason for differentiating claims of legal malpractice from similar actions against physicians and architects. On the contrary, we believe there is much to recommend a uniform rule for applying statutes of limitation. Moreover, we believe the appellate courts of this State have opted for uniform application and have not distinguished between cases involving six and two-year periods of limitation or between cases involving different kinds of professional malpractice.

Finally, defendant calls our attention to Eckert v. Schaal, 251 Cal. App. 2d 1, 58 Cal. Rep. 817, a recent

California decision, and Sullivan v. Stout, 120 N.J.L. 304, 199 Atl. 1, a 1938 New Jersey decision, which held that the cause of action accrued and the statute of limitations began to run from the date the client acted upon the negligent advice. The California decision has been severely criticized (see 15 U.C.L.A. Law Rev. 230), and neither decision reflects the view adopted by recent Pennsylvania decisions. See Schwab v. Cornell, supra; Ayers v. Morgan, supra; Med-Mar, Inc. v. Dilworth, supra.

For the foregoing reasons, defendant's motion for judgment on the pleadings must be dismissed. At what point plaintiff, in the exercise of due diligence, should have discovered defendant's error can be determined at the time of trial. A determination of the timeliness of this action can then be made.

Additional defendant's motion for summary judgment, which raises the same issue on behalf of the abstractor of the title, will also be dismissed.

## ORDER

And now, September 15, 1970, it is ordered that the motions for judgment on the pleadings, which have been filed on behalf of defendant and additional defendant, be and the same are hereby dismissed.