# Ridgway's Account.

*Equity—Mistake of fact—Evidence.*

Equity will not grant relief in cases of mistake of fact except on very clear proof.

*Auditor—Finding of fact—Mistake of fact—Review.*

An auditor's finding of fact confirmed by the court below that a mistake of fact was not proven, will not be reversed by the appellate court in the absence of manifest error.

*Equity—Mistake of fact—Statute of limitations.*

Where several owners of coal lands form a corporation in which they are to take stock according to their respective interest in the lands, and the president of the corporation by a mistake does not receive his full share, he cannot, after he has remained silent for fourteen years with full means of knowledge and every opportunity to discover the mistake, and after the person to whom his shares were issued is dead, have any stand-ing in a court of equity to have the mistake corrected.

The operation of the statute of limitations will not be stayed by the mere mistake or ignorance of a party who had full means of knowledge at hand, and this is especially true where there is no allegation of fraudu-lent concealment.

Argued May 11, 1903. Appeal, No. 82, Jan. T., 1903, by Jacob E. Ridgway, from decree of C. P. Fayette Company, Dec. T., 1901, No. 290, dismissing exceptions to auditor's re-port in In re account of Jacob E. Ridgway et al., directors of the Redstone Oil, Coal and Coke Company. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Exceptions to report of Edward Wilson Boyd, Esq., ap-pointed to audit the accounts of Jacob E. Ridgway and others, directors of the Redstone Oil, Coal and Coke Company.

The opinion of the Supreme Court states the case.

*Errors assigned* were in dismissing exceptions to auditor's report.

*W. G. Guiler,* for appellant.

*Thomas F. McMahon* and *W. D. N. Rogers,* with them *O. S. Richardson* and *Samuel P. Boyd,* for appellees.

OPINION BY MR. JUSTICE DEAN, July 9, 1903 :

Jacob E. Ridgway, the appellant, with McGrath, McKay-Schellenberg, McFarland, Jacobs, Leuffer, Graham and Bow-man were the owners in common of certain coal lands in Fay-ette county. They associated themselves as owners, not incor-porated, under the name of the " Redstone Coal Company." This company or partnership continued in existence for some-time, when the parties concluded to organize as a corporation under the general act of 1874 ; so on May 6, 1887, the " Red-

stone Coal Company" was turned into a corporation under the name of the Redstone Oil, Coal and Coke Company. Its capital stock was $500,000 divided into 10,000 shares, each of the par value of $50.00. This capital was afterwards increased to $750,000. Within a few days after the organization, the owners in common of the lands, including the representatives of W. V. McGrath, who had died, conveyed all the lands of the Redstone Coal Company to the new corporation for which the grantors were to receive as consideration 10,000 shares of the stock of the Redstone Oil, Coal and Coke Company; on each share $5.00 was to be paid in cash into the company, as working capital, the remaining $45.00 per share to be considered as the value of the land conveyed; the owners were to be allotted shares of stock in proportion to their ownership in the land. In 1899 the corporation sold and conveyed all its property, including land, to the Pennsylvania Mining Company for the sum of $1,225,000, and the corporation was dissolved. The directors, of whom appellant is one, filed their account, showing a balance of over $1,000,000 for the stockholders of the corporation, but as the larger part had already been paid over to the stockholders, the actual sum in the hands of the accountants was only $145,312.23; and on suggestion of counsel for all parties interested, Edward Wilson Boyd, Esq., was by the court appointed auditor, " to ascertain debts if any of the Redstone Oil, Coal and Coke Company, report distribution of the funds in the hands of the accountants, first to creditors, second to other parties legally and equitably entitled thereto." Creditors' claims were few and in the aggregate small in amount mainly for costs of audit and counsel fees not disputed ; but a serious dispute arose as to the amount in the fund which ought to be distributed to appellant Jacob E. Ridgway and to W. K. Brown, trustee for W. V. McGrath respectively. Ridgway claimed that at the time of the conveyance of the lands of the Redstone Coal Company to the new corporation, he was the owner of and entitled to a seventeen forty-eighth interest in the property conveyed, and consequently to that proportion of the stock of the Redstone Oil, Coal and Coke Company; that McGrath, for whom Brown is trustee, was entitled to a five forty-eighth interest. Yet he, Ridgway, was awarded only 3,336 shares of stock, which equals only a sixteen forty-eighth interest

instead of a seventeen forty-eighth; that McGrath, for whom Brown is trustee, was in fact awarded a six forty-eighth interest in the stock which was one forty-eighth interest or 205⅔ shares more than he was entitled to.

While the auditor concedes that appellant on the facts made out a strong prima facie case of mistake in apportioning the stock, he thinks it is rebutted by the countervailing evidence. Ridgway was an officer of the company; for years acquiesced in the assertion of ownership by McGrath, not only acquiesced, but officially, under oath, averred McGrath to be the owner. Taking into view Ridgway's actual knowledge of McGrath's claim, his own averments of the extent of it officially under oath, he finds that the mistake is not proven as a fact. The auditor holds, citing Bispham's Equity, sec. 196, and Claybaugh v. Goodchild, 135 Pa. 421. "Equity will not grant relief in cases of mistake (of fact) except on very clear proof." We have examined carefully the evidence and will not undertake to say that the auditor is mistaken in his finding of fact in this particular.

But outside of this finding of fact we think the auditor properly held that the statute of limitations effectually barred Ridgway's claim to have the mistake cured at the audits. On June 3, 1887, the owners of the land agreed it should be conveyed to the corporation which they had just had chartered; that Jacob E. Ridgway should have for his interest in the land 3,336 shares of the 10,000 shares of capital stock; that among others, Brown, trustee of McGrath, should have 1,250 shares. Although Ridgway afterwards took additional shares by purchase and otherwise, until he was the owner of 8,032, and Brown, trustee, took additional shares until he was the owner of 2,387, yet no mistake is alleged in the issue of these subsequent shares; if mistake was made at all, it was in the first agreement for division after the charter was issued. Before November 4, 1889, the shares as agreed upon were actually issued and delivered to the stockholders according to their agreed upon original apportionment, for Ridgway on that date makes oath that they have been so issued. Clearly a right of action either at law or in equity accrued to Ridgway to correct the mistake after the delivery of the 205⅔ shares to trustee Brown before November 4, 1889.

By a mere calculation Ridgway could have discovered the mistake if there was one at that time; as president of the company he had all the means of knowledge and every opportunity to discover it; yet for fourteen years he is silent; in the meantime McGrath and his trustee Brown are both dead. Now on the distribution of this last remnant of this large property he asserts his claim. Surely, under such circumstances, equity will not only follow the law, but the invocation of the statute is in itself equity. As the learned auditor rightly held under the authorities, Steele v. Steele, 25 Pa. 154, Montgomery's Appeal, 92 Pa. 202, and other cases, "The operation of the statute will not be stayed by the mere mistake or ignorance of a party who had full means of knowledge at hand, and this is especially true where there is no allegation of fraudulent concealment." The argument that Ridgway had no legal title to the stock which he could have asserted as a stockholder until after the dissolution, is a mistake. He had an equitable right to demand the stock represented by his proportionate interest in the land immediately after the conveyance to the corporation; a court of equity would have compelled the company to respond to his demand; if it had been issued and delivered wrongfully or by mistake to Brown, trustee, equity would have compelled him to restore it to the rightful owner or the law would have compelled him to pay damages in an action of tort for its detention or conversion.

There is nothing of merit in the other assignments of error filed by appellant which demands discussion. All the assignments of error are overruled and the decree of the court below is affirmed.