## Bernath, Appellant, *v.* LeFever.

Argued November 25, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

44

*Louis Sherr,* for appellant.

*Charles E. Kenworthey,* with him *Evans, Bayard & Frick,* for appellee.

OPINION BY MR. JUSTICE STERN, January 11, 1937:

Plaintiff was a victim of malignant destructive myopia. Notwithstanding long-continued treatments, her condition grew progressively worse, and she was threatened, as to her right eye at least, with practical blindness. Defendant, who had been her oculist for several years, advised an operation on the right eye, and, her consent being given, he operated on January 9, 1930. The procedure, according to defendant, consisted in "what we call needling, breaking the capsule which holds the lens, breaking into the capsule and breaking up the lens to some extent so that the water in the anterior chamber is absorbed into the lens, causes the lens to soften and absorb and disappear."

The vision in the right eye was temporarily improved, and a similar operation on the left eye was performed on May 11, 1930. The right eye, however, began to grow worse again; from the testimony it would appear that after a lens has been removed the posterior capsule frequently becomes opaque, making it necessary to needle it also. Accordingly defendant performed this second operation on the right eye on May 9, 1931. Unfortu-

nately an inflammation developed which made necessary still another operation, performed on May 11, 1931. Finally, in July, 1931, the right eye had to be entirely removed.

The present action is in trespass to recover damages for the injuries to the eye and its ultimate loss. Plaintiff does not claim that either the original or any subsequent operation was ill-advised or was negligently performed; on the contrary, she expressly admits that "defendant is an opthalmologist, whose skill, learning and reputation is of the highest," and that the operation of January 9, 1930, was "the only method known to medical science for the improvement of the serious condition which plaintiff had, and the unfortunate results of the operation were not due to any lack of skill or care on the part of defendant." The action is one for false and fraudulent representations, plaintiff producing evidence that defendant had assured her the operation was not a serious one; "there is nothing to it"; it would correct her vision and enable her to dispense with glasses. The jury disagreed; subsequently the court entered judgment for defendant on the whole record, from which judgment plaintiff appeals.

The court below was of opinion that plaintiff's claim was barred by the statute of limitations and this is the only question involved in the appeal. The suit was started on August 8, 1932. Plaintiff concedes the applicable statute to be that of June 24, 1895, P. L. 236, section 2, which provides that "Every suit hereafter brought to recover damages for injury wrongfully done to the person, in cases where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards." The real controversy is as to when, under the facts of the present case, the statute began to run. It is defendant's contention that "the injury was done" at the time of the first operation, January 9, 1930; whereas plaintiff argues that the earliest date which should be adopted is that of the second operation, May 9, 1931.

It is too well-established to require extensive discussion that the statute runs from the time when the injury was done even though the damage may not have been known, or may not in fact have occurred, until afterwards. "Where the declaration . . . alleges a breach of duty and a special consequential damage, the breach of duty and not the consequential damage is the cause of action, and the statute runs from the date of the former, and not from the time the special damage is revealed or becomes definite": *Moore v. Juvenal,* 92 Pa. 484, 490, cited with approval in *Lawall v. Groman,* 180 Pa. 532, 541. "Special damages, resulting from a breach of duty do not constitute a fresh ground of action, but are merely the measure of the injury resulting from the original cause": *Owen v. Western Saving Fund,* 97 Pa. 47, 54. In the recent case of *Plazak v. Allegheny Steel Company,* 324 Pa. 422, a suit to recover damages for silicosis contracted as a result of an employer's failure to provide adequate exhaust fans, it was held that the statute began to run, not from the time when the employee subsequently ascertained that he had incurred the disease, but from when the injury was wrongfully inflicted as a result of the breach of the obligation to provide a proper place of employment.

Whatever injury was done to plaintiff in the present case was occasioned by the first operation, from which her condition on May 9, 1931, was, as she admits, a direct outgrowth. The secondary or capsulary cataract removed at that time would not have occurred but for the operation on the lens. Nor can the two needlings be considered parts of one general treatment, because the first might have been, and originally was intended to be, the only one; subsequent developments, not uncommon but on the other hand not inevitable, necessitated the later corrective procedure.

Plaintiff contends that she could not know the original operation was unsuccessful until the later measures proved unavailing, and therefore the statute should not be held to run until that time. This argument rests upon

a misapprehension of the nature of the present action. The suit is not on a promise or "guarantee" that plaintiff would be cured; otherwise it would have to be in assumpsit, not trespass. The alleged "fraudulent" representation was that an operation of the type here involved was not serious, and was practically certain to effect a cure. Unless regarded as such a factual statement it could not form the basis of an action for fraud. Obviously, then, plaintiff was not obliged to wait for the outcome of her own operation in order to discover whether or not the representations were true. Indeed, even before the operation was performed at all, she could, by inquiry from the medical profession, have ascertained whether the operation was of the nature represented by defendant, whether it was serious or inconsequential, whether it was speculative or almost certain in its results. It is true that the running of the statute is postponed where, by some independent act of fraud or concealment, a wrongdoer prevents or diverts discovery: *Lewey v. Fricke Coke Co.,* 166 Pa. 536; *Smith v. Blachley,* 188 Pa. 550; 198 Pa. 173; *Fidelity-Phila. Trust Co. v. Simpson,* 293 Pa. 577; *Schwab v. Cornell,* 306 Pa. 536; *Deemer v. Weaver,* 324 Pa. 85. There is no evidence in the present record, however, of any independent act of fraud or concealment on the part of defendant, nor anything which, from whatever angle viewed, would justify a postponement of the operation of the statute beyond the time "when the injury was done."

Plaintiff alleges that defendant assured her prior to the second, as well as the first operation, that "there is nothing to it." The second operation, however, was admittedly necessary by reason of the conditions then existing, and therefore could not constitute an independent cause of action for damages.

Judgment affirmed.