**Robert H. DANIELS and Mary Daniels, his wife**

v.

**The BERYLLIUM CORPORATION.**

**Civ. A. No. 24953.**

United States District Court
E. D. Pennsylvania.

March 16, 1964.

John S. Speicher, Reading, Pa.; Edward L. Wolf, of Richter, Lord, Toll & Cavanaugh, Philadelphia, Pa., for plaintiffs.

Oscar Brown; George P. Williams, III, of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

FREEDMAN, District Judge.

This is a suit for damages brought by a husband and wife. They claim that the wife's beryllium poisoning was caused by the contamination of the atmosphere by defendant's operation of its manufacturing plant.

Defendant moved for "complete or partial" summary judgment under Rule 56, relying on the bar of the statute of limitations. On the record then before me it appeared that the wife resides a little more than two miles from the defendant's plant near Reading, Pennsylvania, and has been constantly exposed to the poisoned atmosphere since some time prior to World War II. She first became ill in the fall of 1949 as a result of the inhalation of beryllium dust. In March 1953 the illness was definitely diagnosed as beryllium poisoning. This suit was not begun, however, until July 1, 1958.

The question presented in these circumstances was on what date "the injury was done" which marks the beginning of the statutory two-year period of limitations prescribed by the Pennsylvania Act of June 24, 1895, P.L. 236, 12 P.S. § 34.[1] Was it the fall of 1949, when the symptoms first appeared? Was it March of 1953, when the diagnosis of beryllium poisoning was made? Plaintiffs contended that the statute of limitations had not even begun to run when they brought their suit on July 1, 1958 because defendant's conduct constituted a "continuing tort" and the injury done to the wife continued uninterrupted even after the suit. I rejected this contention and held that the statute began to run from the time of knowledge of the injury, but that plaintiffs were not barred from recovery for damages aggravating the disease in the two-year period immediately prior to the filing of suit.

In an opinion filed on the motion for summary judgment, I said: "We believe that where a plaintiff has full knowledge of the illness brought about by defendant's course of conduct the injury has been done and the statute of limitations begins to run at that time. The subsequent continuance of the wrong cannot serve to toll the running of the statute of limitations on the earlier injury of which the plaintiff has knowledge. The case is analogous to a continuing tort by trespass or nuisance committed on another's land, where the true principle is authoritatively said to be that the statute begins to run from the time that knowledge arises of the injury. * * *

"It follows that when the diagnosis of beryllium poisoning was made in March of 1953, the injury * * * [was one] for which the right to redress existed. At that time the statutory period began to run." Daniels v. Beryllium Corp.,

---

1. "Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law."

D.C., 211 F.Supp. 452, 455–456 (E.D.Pa. 1962).

Decision on the motion was withheld, however, in order to afford the parties an opportunity "to supplement the record" regarding plaintiffs' knowledge of the defendant's responsibility for the wife's illness. The parties had argued the case on the apparent assumption that the diagnosis of illness was synonymous with knowledge that the injury was inflicted by the defendant, but I was not certain that this was a studied assumption. Daniels v. Beryllium Corp., supra, 211 F.Supp. at p. 456.[2]

The affidavits which have now been filed by the parties differ sharply on the question of plaintiffs' knowledge that the injury was inflicted by the defendant. For present purposes I must, however, as the defendant concedes, accept the plaintiffs' affidavit that although they knew in 1953 of the wife's condition, they did not know until the time of filing suit that it had been caused by defendant's operations.

There is thus raised in the clearest form the important question whether the statute of limitations began to run at the time the wife's illness was diagnosed as beryllium poisoning, even though she had no knowledge or means of knowledge that her illness was the result of any action of the defendant. This is a question of general importance because of the steadily expanding knowledge of the causes of disease. Its answer must here be determined by Pennsylvania law, since this is a diversity suit in which all of the operative facts occurred in Pennsylvania. See Guaranty Trust Co. v. York, 326 U.S. 99, 110, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

The decisions throughout the country are in irreconcilable conflict, and the Pennsylvania cases reflect this lack of uniformity. There is language in many Pennsylvania decisions which would indicate that a plaintiff's ignorance or lack of knowledge does not postpone the running of the statute of limitations unless such lack of knowledge is the result of some conduct of the defendant himself.

In Link v. McLeod, 194 Pa. 566, 45 A. 340 (1900), a judgment creditor's suit against corporate directors was based on an illegal resolution authorizing the disbursement of corporate funds. The statute was held to run from the date of the resolution rather than from the time of payment, and plaintiff's lack of knowledge of the resolution did not toll the statute in the absence of any fraudulent concealment.[3] In Bernath v. LeFever, 325 Pa. 43, 189 A. 342 (1937), plaintiff claimed that defendant fraudulently misrepresented the nature of an operation to be performed upon her eye, but she did not learn of her injury until the performance of subsequent operations culminating in loss of the eye. In affirming the entry of judgment for defendant, Mr. Justice Stern said: "It is too well-established to require extensive discussion that the statute runs from the time when the injury was done even though the damage may not have been known, or may not in fact have occurred, until afterwards." (325 Pa. p. 46, 189 A. p. 343). The opinion made it clear that plaintiff could have checked the accuracy of defendant's representation before the first operation by making inquiries among the medical profession. Similarly, in Ridgway's Account, 206 Pa. 587, 591, 56 A. 25, 26 (1903), it was held that the "operation of the statute will not be stayed by the mere mistake or ignorance of a party *who had full means of knowledge at hand*, and this is especially true where there is no allegation of fraudulent concealment." The rubric that ignorance

---

2. I also afforded the parties an opportunity to supplement the record if there was any claim of an estoppel against the defendant's plea of the statute of limitations. This has not been pressed.

3. Accord, Stucker v. Shumaker, 290 Pa. 348, 355, 139 A. 114 (1927); Mifflin County Nat. Bank v. Fourth Street Nat. Bank, 199 Pa. 459, 462, 49 A. 213 (1901). See 54 C.J.S. Limitations of Actions § 205; Restatement, Torts (1939), § 899, comment e.

does not toll the statute was repeated in McEnery v. Metropolitan Life Insurance Co., 50 Pa.Dist. & Co.R. 395, 399 (1944), but the holding was that the statute had not run because of defendant's affirmative act which tended to mislead the plaintiff.[4]

On the other hand, the rule was early established that the statute does not bar a claim for property damage resulting from subterranean injury where, because of the inherent nature of the physical circumstances, the injured party could have no knowledge that the injury had been done. See Lewey v. H. C. Fricke Coke Co., 166 Pa. 536, 542, 31 A. 261, 262, 28 L.R.A. 283 (1895), where the court noted that "the mischief which the statute was intended to remedy was delay in the assertion of a legal right which it was practicable to assert.[5]" Indeed, in Smith v. Bell Telephone Co., 397 Pa. 134, 153 A.2d 477 (1959), a case involving subterranean injury, the court recently rejected what in essence is the defendant's contention here. There the plaintiff knew that sewage was backing up and seeping into his basement but did not discover until a later time that the harm had been caused by defendant's conduct. It was held that the statute did not begin to run until the cause of harm was or reasonably should have been discovered, and that what was a reasonable period within which to discover defendant's negligence was for the jury.[6]

In Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959), the Supreme Court of Pennsylvania extended the rule of the subsurface injury cases to a personal injury action for malpractice by a surgeon. Plaintiff had felt continuing discomfort for years following a stomach operation, but did not discover until nine years after the operation that the pain was caused by a sponge which the surgeon had left in his abdomen. The court held that the statute ran from the time of plaintiff's discovery of the injury. Mr. Justice Musmanno said that the "time of discovery" rule applied "[w]hen knowledge is impossible because of the laws of nature, or because of the actual fraud of the wrongdoer * * *. It must be borne in mind that this is not a case where the act of negligence was known to the plaintiff but the extent of the damages which ensued therefrom was not ascertained until after the expiration of the statute of limitations. On the contrary, this is a case where the plaintiff did not know of the act (which eventuated in injury to him) at the time *that* act occurred." (397 Pa. pp. 289–290, 154 A.2d 791–792).[7]

---

4. See also the recent language in Schaffer v. Larzelere, 410 Pa. 402, 405–406, 189 A.2d 267, 269–270 (1963): "Under the law of Pennsylvania, it is the duty of one asserting a cause of action against another to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute the suit within the prescribed statutory period [citations omitted]. Mere mistake, misunderstanding or lack of knowledge is not sufficient to toll the running of the statute [citations omitted]. If, however, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the limitation of the action [citations omitted]. Likewise, if the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitation does not begin to run until discovery of the injury is reasonably possible." The holding, however, was that plaintiff should have been permitted to amend his reply to allege defendant's deliberate concealment of the circumstances.

5. Accord, Gotshall v. J. Langdon & Co., 16 Pa.Super. 158 (1901).

6. Mr. Justice McBride there said: "As for the statute of limitations, there seems to be no dispute here that the statute runs, on causes arising from sub-surface injury, from the time of discovery of the cause of the harm or the time when the cause of the harm reasonably should have been discovered, whichever is earlier. * * * [W]hat is a reasonable period * * * is for the jury." 397 Pa. at 141–142, 153 A.2d at 481.

7. A precursor of the Ayers doctrine was Byers v. Bacon, 250 Pa. 564, 95 A. 711 (1915).

In the Ayers case Pennsylvania made its choice on the much discussed question of the application of the statute of limitations in malpractice cases where the injury was unknown and undiscoverable by the plaintiff until shortly before bringing suit. The traditional rule has been that the principle of repose requires the barring of suits in such cases in the absence of specific legislative relief. This rule, for example, was very recently reaffirmed in New York. The Court of Appeals there said that "the cause of action accrues upon the introduction of the harmful substance into the body * * * whether the plaintiff knows of his condition or not." [8] The Ayers case has established the contrary view as the rule in Pennsylvania. It refused to hold a claim barred before the injured party yet knew or had any means of knowing that his right of action existed. This view is increasingly being heard, and has indeed a constitutional echo.[9]

A federal court must, of course, be careful not to permit its understanding of local law to be distorted by the prevailing federal view. Nevertheless, I think it justifiable, in view of the decisions of the Pennsylvania Supreme Court in the Smith and Ayers cases, to say that the language of Mr. Justice Rutledge in Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282 (1949), expresses the modern Pennsylvania policy. He there stated that the bar of limitations was not intended "to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights." [10] I am satisfied that at the very least the traditional separation of cases of subterranean property damage from personal injury cases in Pennsylvania no longer exists. For if the running of the statute of limitations is to be tolled when one cannot know what has happened under ground or within one's abdomen—described in Ayers as a necessary consequence of the "laws of nature" (397 Pa. at 289, 154 A.2d 788)— there is no good reason to apply the statute when one cannot know or observe what occurs above ground or in the open because the activity involves invisible microscopic particles whose harmful properties are unknown at the time.

It is, of course, true that tolling the period of limitations while it is scientifically impossible for the plaintiff to learn of his injury will keep alive many dormant claims. But much of the seeming hardship to a defendant is relieved by the fact that the same unavailability of scientific knowledge which may excuse a plaintiff's delay, may also serve to excuse the defendant's conduct which is claimed to have been lacking in reasonable care.

Accordingly, I hold that the statute of limitations did not begin to run until plaintiffs, by the exercise of reasonable diligence, could have discovered that the wife's condition was caused by defendant's operations. In view of the conflict in the affidavits the factual question of when plaintiffs knew or should have known that the illness was attributable to defendant's activity must be left for determination by a jury. I will therefore deny defendant's motion for summary judgment.

8. Schwartz v. Heyden Newport Chemical Corp., 12 N.Y.2d 212, 217–218, 237 N.Y.S. 2d 714, 718, 188 N.E.2d 142, 144–145 (1963).

9. See, e. g., Quinton v. United States, 304 F.2d 234, 240 (5th Cir. 1962); Lillich, The Malpractice Statute of Limitations in New York and Other Jurisdictions, 47 Cornell L.Q. 339 (1962).

10. See also Quinton v. United States, 304 F.2d 234 (5th Cir. 1962).