**Edna CARNEY, Administratrix and Administratrix Ad Prosequendum of the Estate of John Carney, deceased**

v.

**Charles N. BARNETT, t/a C. N. Barnett Co.**

**No. 33602.**

United States District Court
E. D. Pennsylvania.

Dec. 21, 1967.

Broderick, Schubert & FitzPatrick, by Henry B. FitzPatrick, Jr., Philadelphia, Pa., for plaintiff.

George P. Williams, III, Philadelphia, Pa., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel, for defendant.

## OPINION

JOSEPH S. LORD, III, District Judge.

Plaintiff, as administratrix ad prosequendum and as administratrix of the estate of her deceased husband, instituted a Wrongful Death action and a Survival action on June 6, 1963 to recover damages for the death of her husband from thallium poisoning. At trial the court directed a verdict for the defendant[1] ruling that the suit was barred by the Statute of Limitations. Plaintiff seeks a new trial, assigning as reasons

the directed verdict, and also the court's denial of plaintiff's motion for leave to amend her complaint to plead breach of warranty.

Decedent, a New Jersey resident, was employed as a route serviceman by the D. M. Fleming Co., a New Jersey corporation [hereinafter "Fleming of N. J."]. Fleming of N. J. provided "pest control" services for residents of New Jersey and it was decedent's job, as one of several route servicemen, to provide the company's service at regular intervals to a certain group of customers.

Fleming Corp. of Penna. [hereinafter "Fleming of Pa."], although managed by and having as its shareholders the same family as Fleming of N. J., is nevertheless operated as a separate entity. For the most part the two companies are engaged in the same business, the principal difference being that *only* Fleming of Pa. employs, in addition to the route servicemen, special servicemen. These men handle the difficult pest control problems for *both* the Pennsylvania and New Jersey companies.

In the performance of their duties the special servicemen have occasion to use thallium sulphate, a particularly effective weapon for combating difficult pest control problems. For this reason Fleming of Pa. made periodic purchases of thallium sulphate from the defendant who imported it from Belgium.

Thallium has extremely dangerous propensities if ingested into the human body. Therefore, when handling thallium one must be extremely careful. Since the special servicemen were trained in the use of thallium, it was the normal practice that they would be sent to those jobs that needed thallium to provide effective pest control. Thus, whenever Fleming of N. J. had a customer whose situation was such that thallium was required, it used one of the special servicemen from Fleming of Pa. Occasionally, however, it would de-

[1] The original defendant died and the executor of his estate was substituted as party defendant. Hereafter, "defend-

ant" refers to C. N. Barnett, t/a C. N. Barnett Co."

viate from this practice and one of the route servicemen from Fleming of N. J. would go to Fleming of Pa. to obtain thallium for use on their jobs.

In the latter part of May, 1961, decedent used thallium to deal with a rat problem for one of his regular customers. On Sunday, May 29, 1961, he also used the chemical in the cellar of his home. Around this time he started to complain to his wife of aches and pains. On Monday, May 30 his condition had worsened to the point where he was unable to stay at work. On Monday evening the pains had become so bad that he was taken to the hospital where he remained until his death from thallium poisoning one week later.

At trial plaintiff sought recovery based on the negligence of the defendant in its failure adequately to warn of the dangerous propensities of the thallium and also on the theory of strict liability.

 The plaintiff first claims that the court erred in directing a verdict for the defendant on the ground that the statute of limitations had barred her survival action.[2] We conclude that our action was proper. Since jurisdiction is based on diversity of citizenship, we must follow the law of Pennsylvania in determining what statute of limitation applies. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Pennsylvania holds that the statute of limitations of the state of the forum controls the action. Rosenzweig v. Heller, 302 Pa. 279, 153 A. 346 (1931). Pennsylvania follows this rule even in situations where it has no substantive concern with the controversy. And just as we must follow Pennsylvania law in determining what statute applies, so also must we apply the Pennsylvania case law in determining when the statute begins to run.

The applicable Pennsylvania statute of limitations for survival actions is Pa.Stat.Ann. Tit. 12, Sec. 34, Stegner

v. Fenton, 351 Pa. 292, 40 A.2d 473 (1945), which provides that an action "[m]ust be brought within two years from the time when the injury was done and not afterwards." The Pennsylvania courts in interpreting that act have said that "this statute, as all statutes, of course, must be read in the light of reason and common sense." Ayers v. Morgan, 397 Pa. 282, 284, 154 A.2d 788, 789 (1959).

Thus, in Smith v. Bell Tel. Co., 397 Pa. 134, at page 141, 153 A.2d 477, at page 481 (1959), a case involving sub-surface injury to the plaintiff's residence, the court said:

"As for the statute of limitations, there seems to be no dispute here that the statute runs, on causes arising from subsurface injury, from the time of *discovery of the cause of the harm or the time when the cause of the harm reasonably should have been discovered,* whichever is earlier. * * *" (Emphasis supplied).

Nor has this result been limited to cases of sub-surface injury, for the same court in Ayers v. Morgan, supra, a so-called "sponge" case, applied the "time of discovery" rule. In Daniels v. Beryllium Corp. 227 F.Supp. 591 (E.D.Pa., 1964) the wife-plaintiff became ill in 1949. In March, 1953 the illness was diagnosed as beryllium poisoning, However, plaintiffs did not know until the time of filing suit on July 1, 1958 that the illness was caused by defendant's operations. After a thorough review of the Pennsylvania authorities, Judge Freedman said, at page 595:

"* * * I am satisfied that at the very least the traditional separation of cases of subterranean property damage from personal injury cases in Pennsylvania no longer exists. * * *"

He concluded (p. 595):

"* * * that the statute of limitations did not begin to run until plain-

---

2. Plaintiff does not question the directed verdict as to the Wrongful Death Action since that action is governed by a shorter statute of limitations, Pa.Stat.

Ann. Tit. 12, Sec. 1603, which we must apply. Kleinschmidt v. Universal Seafood Co., 201 F.Supp. 96 (Pa.1961).

tiffs, by the exercise of reasonable diligence, could have discovered that the wife's condition was caused by defendant's operations. * * *"

■ We think the correct rule, distilled from the authorities, is this: the statute begins to run as of the date of injury unless, in the exercise of reasonable diligence, the plaintif could not have ascertained defendant's culpability within the statutory period. When that culpability could not reasonably have been so ascertained, the statute begins to run as of the date it could reasonably have been discovered.

In the present case the action was instituted on June 6, 1963. The defendant contends that the decedent had sufficient knowledge before June 6, 1961, to commence the running of the statute. Thus, any action brought on June 6, 1963 would be without the two year statutory period.

■■ Since a Survival Action is not a new cause of action but merely a continuation of the cause of action which accrued to the deceased, Stegner v. Fenton, supra, it is the decedent's knowledge that we must consider in determining when the statute commences to run and not that of his personal representative. For the statute does not start to run anew upon the passing of decedent's claim to his personal representative. Cf. Rieser v. Baltimore & O. R. R., 228 F.2d 563 (C.A. 2, 1955).

■ Of course, the question of knowledge in cases such as this is usually a question for the jury. Daniels v. Beryllium, supra; Smith v. Bell Tel. Co., supra.

■ The record is uncontradicted, however, as to decedent's knowledge. Decedent was admitted to the hospital on May 29, 1961. In a history given to the hospital authorities he stated that he had accidentally ingested some thallium. In a second history given the same day he reiterated what he previously said as to what he thought the cause of his illness was. The record also indicates that decedent was aware that he was being treated for thallium poisoning. He knew, of course, where he had obtained the thallium.

On the state of the record we would be derelict in our duty unless we directed a verdict. For "in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict. * * *" Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1930). In our case, giving the plaintiff the benefit of all inferences reasonably to be drawn, the jury could not have found, on the evidence, that the plaintiff did not have sufficient knowledge *before* June 6, 1961, so that with the use of reasonable diligence the suit could have been instituted within two years. Unlike *Daniels,* there was no question as to what caused the illness. He knew that he had been using thallium. Here, the only possible question was who the seller was. The jury could not conceivably have found properly that reasonable diligence over a two year period would not have disclosed this information. A simple inquiry of the employer or Fleming of Pa. would have revealed the seller's identity. And, of course, plaintiff's argument that he must first know his legal theory before the statute starts to run is without foundation. We can reach but one conclusion: that the institution of suit on June 6, 1963 was untimely.

■ Plaintiff's next assignment of error is our denial of her motion for leave to amend to plead breach of implied warranty.[3] One of our reasons for so ruling was that we felt, as a matter of law, that the seller's warranty could not extend to the decedent. Therefore, there

---

3. A survival action for breach of warranty is permissible, Miller v. Preitz, 422 Pa. 383, 221 A.2d 320 (1966), and is governed by the four year statute of limitations provided for in Pa.Stat.Ann. Tit. 12A Sec. 2–725(1).

could be no recovery based on a warranty. We adhere to that ruling.

Plaintiff urges that we should look to the law of New Jersey to determine warranty rights. We think this would avail plaintiff nothing. New Jersey, it is true, has extended warranty protection to employes of the seller, Cintrone v. Hertz Leasing & Rental Service, 45 N.J. 434, 212 A.2d 769 (1965), an extension not made by Pennsylvania, Hochgertel v. Canada Dry Corp., 409 Pa. 610, 187 A.2d 575 (1963). However, New Jersey has not extended warranty coverage to employes of one other than the purchaser, nor do we think it would.

 We need not, however, speculate on how far New Jersey would or would not extend its warranty coverage, for we do not think that New Jersey law applies. Sitting as a diversity forum in Pennsylvania, we must determine what law Pennsylvania would look to under the circumstances. Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). We are convinced that Pennsylvania would apply Pennsylvania law. The courts of that state have exhibited a rather rigid policy against extension of warranty coverage even to employes of the purchaser, Hochgertel v. Canada Dry Corp., supra, unless he also happens to be the purchasing agent, Yentzer v. Taylor Wine Co., 414 Pa. 272, 199 A.2d 463 (1964). In view of this, we are not persuaded that Pennsylvania would reach out for a rule that could breach its policy and extend coverage to one who was not even an employe of the purchaser, especially where the sale and delivery took place in Pennsylvania between two local Pennsylvania business entities. Indeed, this policy is now not only judicial, but legislative. Pa. Stat. Ann. Tit. 12A, Sec. 1–105(2) (a), (b) and (c). Applying Pennsylvania law, then, as we must, it is clear that plaintiff cannot recover on any theory of implied warranty. It follows that the denial of the motion to amend was not error.

For the foregoing reasons, the plaintiff's motion for a new trial is denied.

It is so ordered.