421 A.2d 1181

**John J. KEATING, Appellant,**

**v.**

**Reuben ZEMEL, M.D., Allegheny General Hospital, a non-profit corporation, and R. Zemel, a Pennsylvania professional Corporation, Robert Emmett Walley, III, M.D.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed Sept. 5, 1980.

Petition for Allowance of Appeal Denied Feb. 27, 1981.

Michael R. Ford, Pittsburgh, for appellant.

David H. Trushel, Pittsburgh, for Zemel, appellee.

George M. Weis, Pittsburgh, for Allegheny Hospital, appellee.

Thomas J. Reinstadtler, Pittsburgh, for Walley, appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

CAVANAUGH, Judge:

This appeal is from the grant of a motion for summary judgment in favor of appellee, Robert Emmett Walley, III, M.D., and against appellant, John J. Keating. Walley is one

of three defendants in a medical malpractice action brought by Keating.

■ Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). On appeal the record must be examined in the light most favorable to the non–moving party. *Bollinger v. Palmerton Area Com. Endeavor, Inc.*, 241 Pa.Super. 341, 361 A.2d 676 (1976); *Lane v. Schacht*, 260 Pa.Super. 68, 393 A.2d 1015 (1978). In compliance with this standard we recite the factual history from undisputed facts of record or those contained in appellant's affidavit filed in opposition to appellee's motion for summary judgment.[1]

Appellant underwent surgery on June 6, 1974, and it is now apparent that a foreign body was left in appellant at the situs of his abdominal surgery. After complaint of pain a further procedure was performed on October 14, 1975, and the foreign body was removed. Within two years of the latter date, suit was instituted against the surgeon in the 1974 operation, Reuben Zemel, M.D. and the Allegheny General Hospital. Appellant's original theory was that Dr. Zemel employed a sixteen–inch red rubber catheter at the site of the surgery and negligently failed to remove it. He alleged that the presence of the foreign body went undiscovered until its removal by endoscopy on October 14, 1975. Appellant relied upon portions of the Allegheny General Hospital records in identifying the foreign body. For example, the "Final Diagnosis" states, "(1) Foreign body (sixteen–inch rubber catheter) from stomach and along curve of duodenum." The object is similarly described in the discharge summary. This description found its way into appellant's past medical history during a subsequent hospitalization and was also relied upon by appellant's consultant, Cyril H. Wecht, in the formation of his opinions concerning the

1. Appellant also moved for summary judgment. This motion was denied.

case. However, the hospital record is at least to some degree ambiguous since the gastrointestinal endoscopy report relating to the removal of the foreign body mentions it three times as simply "tube" (with a blank space before the word in each instance). On June 3, 1977, still within two years of the discovery of the foreign object and the removal by endoscopy, appellant's counsel took the deposition of Dr. Brodmerkel, the physician who performed the gastrointestinal endoscopy. He denied knowledge of the origin of the tube, but described it as buff yellow and gave a manufacturer's identification. Previously, on deposition, Dr. Zemel had denied any knowledge of the tube removed from appellant. Finally, on June 28, 1978, well beyond two years after the removal of the tube, Dr. Zemel's attorney took the deposition of appellee, Dr. Walley, who had been the attending anesthesiologist at the surgery in 1974 when the offending object was left in the body of appellant. At the deposition Dr. Walley stated that the tube removed from appellant was a tube used by him in the 1974 surgery and that it was not red rubber but, in fact, was plastic.

 The trial court concluded that an amended complaint thereafter filed against Dr. Walley was beyond the statute of limitations and dismissed the complaint.[2] Appellant relies upon *Grubb v. Albert Einstein Medical Center*, 255 Pa.Super. 381, 387 A.2d 480 (1978) for authority that the statute of limitations did not run on his claim against Dr. Walley, arguing that his culpability could not have reasonably been ascertained at least until the date of Dr. Brodmerkel's deposition on June 3, 1977, and that the limitations period should commence from that date. *Grubb* adopted language from a United States District Court case which purported to enunciate the applicable Pennsylvania rule. Our Court in *Grubb* quoted from *Carney v. Barnett*, 278 F.Supp. 572 (E.D.Pa.1967), as follows:

"... The statute begins to run as of the date of the injuries unless, in the exercise of reasonable diligence, the

---

**2.** The parties do not contest that the applicable limitation period is two years. 12 P.S. § 34 (repealed); 42 Pa.C.S.A. § 5524.

plaintiff could not have ascertained defendant's culpability in the statutory period. When that culpability could not reasonably have been so ascertained, the statute begins to run as of the date it could reasonably have been discovered." [3]

*Grubb, supra,* 255 Pa.Super. at 399–400, 387 A.2d at 489.

*Grubb* applied this principle to a plaintiff who suffered quadriplegia as the result of a surgical misadventure. Although suit was begun against the physicians and the hospital within two years, the manufacturer of an allegedly defective surgical device was not joined until thirteen days after the second anniversary of the operation. Our Court stated that there was no record in the evidence that the patient was in a position thirteen days after her operation to determine the causal relationship between her injuries and the surgical instrument. The Court also found, without stating why, that it was not until over two years after the surgery that the plaintiff was able to take a deposition of a physician and review the post–operative memorandum. As a result the Court apparently concluded that the culpability of the defendant manufacturer could not have been reasonably ascertained until at least some period beyond the date of the operation.

Although *Grubb* is not entirely clear on the point we do not read the case, as appellant suggests, as starting the running of the statute of limitations *whenever* the culpability of a defendant is reasonably ascertainable. We read it, and the clear language of *Carney* on which it relies, as providing a new commencement date for the statute only when the culpability cannot reasonably be discovered within the statutory period following the date of the injuries.[4]

3. The official report of *Carney* uses the word "within" after the first usage of "culpability".

4. The cases do not distinguish between situations where the victim could not reasonably be aware that his injury or damages may have resulted from actionable conduct on the part of another and situations where one may be held to know of an actionable wrong but be unaware of the identity of culpable parties. In the former cases the statute reasonably begins to run from the date the plaintiff is fairly

Applying this rule, as we understand it, to the present case we nevertheless find that the appellant could readily have ascertained the role of Dr. Walley well within the statutory period. The tube was described by Dr. Brodmerkel and its manufacturer was identified during a deposition over four months before the running of the statute from the date the tube was removed. In addition, Dr. Zemel, in his deposition, denied failing to remove a tube or similar object. Dr. Walley was identified as the attending anesthetist from the date of the original operative procedure yet his deposition was not taken within the statutory period even after a question arose as to the source of the tube. Moreover, as previously noted, the description of the foreign object was to some extent ambiguous in the original hospital record, information which should have prompted a motion to produce the object for examination instead of relying on the hospital records. Thus the exercise of reasonable diligence would unquestionably have led to an identification of the source of

charged with the necessary knowledge and must begin for the first time doing all those things which a statute of limitations is meant to provide time for: an opportunity to select and consult with a lawyer, investigation, initiation of suit, discovery, joinder of additional parties, etc. Cases in this category include subsurface injury to real estate, *Smith v. Bell Telephone Company*, 397 Pa. 134, 153 A.2d 477 (1959), and "sponge" cases where a foreign object is left internally following surgery, *Ayers v. Morgan*, 297 Pa. 282, 154 A.2d 788 (1959) [the instant case is a "sponge" type case and the appellee does not contend that the statute began to run at anytime before the tube was removed from appellant]. On the other hand there are many cases where the victim experiences a specific episode which clearly puts him on notice that there may be legal responsibility on the part of another or others. In this situation the only problem is ascertaining the culpable party. Although the *Carney* rule, adopted in *Grubb*, purports to be a distillation of the Pennsylvania cases, we are unable to find Pennsylvania cases which allow extension of the statute of limitations after an ascertainable tortious episode where there has not been fraud or concealment. The "culpability" rule of *Carney* has been questioned as a proper statement of Pennsylvania case law. *See Huber v. McElwee*, 392 F.Supp. 1379 (E.D.Pa.1974). Indeed a strict reading of the rule which would begin the running of a new statutory period for one who could only reasonably ascertain culpability twenty–five months after the injury but bar suit by one who could reasonably ascertain culpability twenty–three months after the injury if suit was not initiated within the following month would seem to be anomalous.

the tube left in appellant's body. Appellant does not argue that there is any concealment or misleading on the part of Dr. Walley on which to ground an estoppel. At best this is a case of mistake, misunderstanding or lack of knowledge which do not toll the running of the statute of limitations in Pennsylvania. *Shaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267 (1963); *Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967).

Affirmed.