558 A.2d 872

**Edith E. POUNDS and Ralph Pounds, her Husband, Appellants,**

**v.**

**John LEHMAN, M.D., and Beaver Valley Orthopedic Associates, P.C.**

Superior Court of Pennsylvania.

Argued March 1, 1989.

Filed May 5, 1989.

Petition for Allowance of Appeal Denied Oct. 4, 1989.

Christine L. Donohue, Pittsburgh, for appellants.

Robert S. Grigsby, Pittsburgh, for appellees.

Before CIRILLO, President Judge, and BROSKY and TAMILIA, JJ.

BROSKY, Judge:

This is an appeal from an order granting judgment notwithstanding the verdict in favor of appellees. Appellants raise only one question for our determination, whether the "discovery rule" is "applicable" when the injury is discovered within a two year period after a surgical operation. The trial court found the rule inapplicable if the injury was in fact discovered during the two year period after the surgical operation took place. We vacate and remand.

On May 22, 1979, appellant Edith Pounds underwent back surgery performed by appellee John Lehman. The basis of the present action is the allegation that appellee Lehman failed to disclose and inform appellant of the risks of the surgery, specifically the potential for scar tissue development, and of the alternatives to surgery. Appellant had injured her back while lifting an object at work in June of 1978. Appellee began treating appellant who underwent a conservative treatment under appellee's direction. Appellant went back to work but experienced severe pain which required her to stop working. On April 30, 1979 Dr. Lehman recommended low back surgery.

Testimony at trial was varied as to the information disclosed to appellant prior to surgery. However, it does appear that no discussion was had on the potential for scar tissue formation at the nerve roots. Surgery took place on May 22, 1979. Appellant remained under appellee's care after surgery and eventually returned to work in January, 1980. Appellant's condition purportedly improved after surgery, yet she continued to experience low back and left leg pain until, on May 31, 1980, appellant experienced a sharp pain her back while lifting a box at work. She was again admitted to Ellwood City Hospital and diagnosed by appellee as suffering acute low back sprain. Appellant was referred to a neurosurgeon, Dr. Phillips, whom she first saw in July, 1980. Dr. Phillips performed exploratory sur-

gery on August 1, 1980, whereupon he discovered scar tissue compressing the L5–S1 nerve, located in the same proximity where the first surgery took place. The scar tissue was described as permanent.

After appellant's surgery, but before her discharge on August 4, 1980, Dr. Phillips related to appellant that her low back condition was caused by the scar tissue which formed after her first surgery by Dr. Lehman. She had remained under Dr. Phillips care up until the time of trial.

Appellants instituted an action against appellees on July 30, 1982. After a jury trial and upon special interrogatory, a verdict was returned in appellant's favor. However, upon appellees' motion, judgment n.o.v. was granted. The trial court, asserting that appellant knew of the requisite elements sometime in August, 1980, agreed with appellees that the discovery rule was "inapplicable" to render appellant's action timely as the knowledge was gained within the "original" statutory period. Thus, it was concluded that appellants were obligated to file suit within two years of the operation and not within two years of the discovery date.

We are puzzled to a degree as to how the above interpretation was garnered. However, we must state that there is a lack of support in law and reason for the application of the "discovery rule" in the manner done so here. We stated in *Larthey by Larthey v. Bland,* 367 Pa.Super. 67, 532 A.2d 456 (1987):

As a general rule, the statute of limitations begins to run in a tort case when the cause of action accrues, meaning the date the injury is sustained. "The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Ayers v. Morgan,* 397 Pa. 282, 290, 154 A.2d 788, 792 (1959).

The so-called "discovery rule" is considered an equitable exception to the general rule that the limitations period begins to run when the "injury" occurred and "applies" when there is an *"inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its

cause...." Id., 532 A.2d 458, quoting *Pocono International Raceway Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). (Emphasis in the original). Of course, in this sense, the discovery rule itself is only relevant if in fact the "date of discovery" is after the date when the cause of action could be said to have accrued.

It is important to note that in actuality the discovery rule is "applied" in essentially two different fashions. In some cases the rule is applied, as just indicated, to excuse or toll, for equitable reasons, the period of time in which an individual is reasonably unaware that an actionable injury has been sustained. However, the rule, it appears, is also utilized as a tool to determine when, in fact, a cause of action accrues or accrued. This can be divined from the quoted language from *Ayers*. To the extent the "injury is done when the act heralding a possible tort inflicts a damage which is *physically objective and ascertainable.*" *Ayers*, supra., (emphasis added), it would seem, in such cases, that the date of accrual of the action is in fact, the same day as the "date of discovery." This is perhaps particularly true in cases where it is nearly impossible, if not impossible, to determine with any degree of exactness when the injury occurs, and thus when the cause of action accrues. Consider, for example, the so-called creeping disease cases. One may be exposed to the dangerous substance for a great deal of time but determination of the precise moment when that exposure results in an actionable injury may well be impossible.[1] In such a case the "discovery rule" is not really an

---

[1] A similar comment could be made in many medical malpractice cases. For instance, is one injured when a surgeon negligently leaves an instrument at the site of the surgery, as was done in *Ayers*, or is the injury sustained when that act results in some form of physical pain or impairment? Similarly, in the present case, appellant claims she experienced scarring at nerve roots in her spine which is causing pain and disability. To the extent this scarring is considered the injury sustained, the date of the operation would seem immaterial as obviously the scarring was not present at the time the surgery was completed. *Ayers* indicates the injury is sustained under such circumstances when damage becomes physically objective and asertainable. *Levenson v. Souser*, infra, follows this lead in informed consent cases as well, even though such a case is, technically speaking, a battery case.

equitable remedy to toll the statute of limitations, but instead is a legal and logical device to signal the arising of an actionable injury itself. Thus in a case like *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984) (en banc), application of the "discovery rule" in an asbestos action, it would seem, was motivated as much, if not more, by a need to designate the time when a cause of action accrued, as it was to provide relief to an individual or individuals whose cause of action had previously accrued but was undiscovered, or undiscoverable, for a period of time. In contrast, the discovery rule is also applied in circumstances where the action is ripe for suit prior to a time when it is discovered by the injured party to be so. This is essentially the motivation behind certain malpractice cases where perhaps an "injury" is sustained during an operation yet the patient is found to have been unable to ascertain either the injury or its cause for a certain period of time. *See Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959).

Obviously, to the extent the discovery rule is being applied to determine the date of injury, and thus the date the action accrued, the question raised here would be moot. The periods of time would be coterminous and there would be no question of whether the discovery date was within or without the "initial two year period." However, to the extent the discovery rule is being applied to ascertain the date a plaintiff did or should have discovered a cause of action where admittedly the cause accrued prior to that time, we are unconvinced that the rule works to extend two years time for filing a suit only where the discovery date is outside the initial two year period.

The general purpose of the limitations period is to balance the interests of a potential plaintiff to have a reasonable amount of time in which to pursue a legal claim against an individual and the potential defendant's right to be free from dilatory or stale claims. Under present law this statutory period for pursuing tort claims is two years. The general purpose of the discovery rule, in our opinion, is

to exclude the period of time to which the injured party is reasonably unaware of the fact that an actionable injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury. The discovery rule is "applicable" when there is an inability to ascertain the fact that an injury has been sustained despite the exercise of due diligence. *Pocono Raceway*, supra. The flip side of this is, as has often been stated, that the date of discovery is the date the plaintiff knew or reasonably should have known that, one, he or she has been injured, and two, that the injury has been caused by another party's conduct. In *Cathcart*, and as quoted and relied upon in *Larthey*, we stated:

> Where this rule is applied, the statute of limitations *will not begin to run* until the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury. *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 135–136, 471 A.2d 493, 500 (1984) (citations omitted).

All that was meant by the words "where this rule is applied" is that where the conclusion is reached that an injured party would not reasonably be aware that he or she had sustained an actionable injury prior to a certain point in time. Thus, the rule *"applies"* to toll any period of time between the actual sustaining of the injury and the point in time where the awareness of the injury became *reasonably ascertainable*. From that point in time the period *begins* to run and the party is obligated to file an action within two years of this date. This is so even if the plaintiff did not actually become aware on that date that an actionable injury was sustained. See, *Pocono Raceway*, supra.

Of course, from a logical standpoint it is perhaps superfluous to say "when the rule applies", for to the extent the discovery date, under the rule, is the date when a reasonable person would realize that he or she had sustained an injury caused by a third party, and to the extent actual knowledge is not necessary, there will always be a discovery date and, perhaps, often that date would be the date

the injury was in fact sustained. Thus, in some, and possibly many, cases, the two year period from the date of injury and from the imputed date of discovery would be the same. In such cases it would be perhaps less correct to say that the rule does not apply as it would be to say that application of the rule would not extend or toll the limitations period to any degree. However, in any event, it appears clear that the date of discovery is irrelevant as to whether or not one is extended two years from that date to file an action. As quoted material from *Cathcart* demonstrates, where the rule is applied, and thus where there is a period of time after the injury is actually sustained where a person would be reasonably unaware of the injury, the statute of limitations will not *begin to run* until the injury is discovered or should have been discovered. 324 Pa.Super. at 135–136, 471 A.2d at 500. In *Larthey* we also described the discovery rule as working to *toll* the statute of limitations, thus preventing it from running. Presumably, once it began to run it would run the full two year period.

Under appellees' theory an individual who was unable to discover his or her injury until just a few days prior to a point two years after the date it was actually sustained would be charged with an obligation to file an action almost immediately or suffer great prejudice, while an individual who could not discover the injury until more than two years after the injury was actually sustained would be granted a full two years from the discovery date to file an action. There is simply little logic or policy to support this interpretation. If an individual who discovers an injury 23 months after it is sustained is charged with an obligation to file within a month, why wouldn't the same burden be placed upon an individual discovering the injury on the 25th month? Further, if it was or is undesirable to allow an individual who discovers an action in the 23rd month two full years to bring an action so that the total period would be 47 months, why would it be desirable to allow certain individuals an additional 24 months when the *minimal* total period of time allowed would be 48 to 49 months?

The cases cited by appellees simply do not support the position they espouse. For instance, in *Keating v. Zemel*, 281 Pa.Super. 129, 421 A.2d 1181 (1980), there was a classic discovery rule situation. The appellant there underwent surgery on June 6, 1974, during which a tube was left at the site of the surgery. This fact was not discovered until another surgery was performed on October 14, 1975, a time within two years of the negligent act. In discussing the case we gave no indication that the period between June 6, 1974 and October 14, 1975 would not be tolled from the statute of limitations simply because the negligent act was discovered within the statutory two year period, thus giving the patient an opportunity to file suit within two years of that first surgery. Further, every indication signified a conclusion that October 14, 1975 was the so-called discovery date. In reference to this matter we stated "[w]ithin two years of the latter date, suit was instituted against the surgeon ..." thus leaving at least an implicit suggestion that the panel believed that the second surgery constituted the beginning of the limitations period. Id., 421 A.2d at 1182. We simply held in *Keating* that the joinder of a new defendant more than three years after the removal of the tube was untimely.

The apparent genesis of appellees' argument here is the discussion in *Keating* on determination of culpability. It was argued there that the action was timely because the discovery of who was responsible for leaving the plastic tube in the appellant had not been discovered until some three years after the operation. There is some authority discussed in *Keating* that where culpability for the negligent infliction cannot be ascertained during the two year period the period begins to run upon the date it could have been reasonably discovered. The *Keating* panel expressed some reservation about this interpretation.[2] However, re-

---

2. In light of case law postdating *Keating* this discussion takes on a greater focus. One purpose of the two year statutory limitations period is to allow the prospective plaintiff an opportunity to investigate the relevant facts of the cause of action. Under *Cathcart*, the limitations period begins to run upon ascertaining knowledge of an

injury and the fact that it has been caused by a third party. It does not appear that under *Cathcart* one needs to know the precise party responsible for the injury for the period to begin running. In fact, in that case, we disagreed with the contention that the limitations period did not begin to run against the suppliers of asbestos products until those suppliers had been identified. Thus, it would seem, one is charged with an obligation to discover who the culpable or responsible parties are, at least where discoverable in the exercise of due diligence, while the period is running where the responsible party is not immediately apparent.

The discussion of importance in *Keating* revolved around the decision in *Grubb v. Albert Einstein Medical Center*, 255 Pa.Super. 381, 387 A.2d 480 (1978), which cited *Carney v. Barnett*, 278 F.Supp. 572 (E.D.Pa.1967). *Carney*, if not *Grubb*, appears to interject a determination of culpability into the discovery rule equation so that where a determination of responsibility or culpability for the injury cannot be discovered within the limitations period an individual would be extended two years from the date of this discovery to file. Apparently, under this theory, if one does ascertain the culpable party within the two year period one is obligated to institute the action within that period. The *Keating* panel expressed reservation about this statement of law and felt the holding of *Grubb* should be limited to a similar factual scenario, namely, where an individual *cannot* reasonably determine culpability within the statutory period. Thus *Keating*, and, of course, the later decision in *Cathcart*, could be cited for the proposition that one is not excused from investigating culpability where the fact that an actionable injury has been sustained is discovered and the culpable party is not immediately ascertainable. However, this point aside, the decision in *Keating* is further distinguishable from the present one.

*Keating*, and, for that matter, *Grubb*, dealt with the joinder of a party after the previous institution of suit. Thus, the fact that an actionable injury had been sustained had been previously determined. The inquiry in those cases dealt with determination of culpability not discovery of injury. Nothing in those cases suggests that the discovery rule is inapplicable to start the limitations period upon discovery of the injury. Those cases, more correctly stated, deal with the obligation to join additional parties after suit had been instituted. Obviously, a party can be joined to a current action with relative ease. Thus, the timeliness of that action might be more properly gauged upon an ability to do so within the limitations period already running. (Of course, under *Cathcart* the period would be running against all culpable parties upon discovery of the injury, regardless of whether the culpability is immediately ascertainable.) However, that inquiry presupposes that the period is already running and there is nothing to suggest, in those cases, that the timing of the discovery of the injury in some way affects the determination of whether the period will begin running on the date of discovery or at some previous point in time. Furthermore, and just as obvious, the ease with which an additional party can be joined to an existing action is in direct contrast to the difficult road that may be ahead of a litigant after the discovery that an actionable injury has been sustained. Thus, it is wholly inappro-

gardless of the correctness of that proposition, under the facts of *Keating,* there is no authority for the position put forth here. Under appellees' theory since the injury and third party causation were discovered during the two year period the discovery rule would have been "inapplicable" and the appellant would have been obligated to file the action within two years of the first surgery. However, there is absolutely no indication that the panel of this court considered the period to have started running at any point earlier than the second operation when the tube was discovered. The decisions in *Larthey,* supra, and *Groover v. Riddle Memorial Hospital,* 357 Pa.Super. 420, 516 A.2d 53 (1986), are consistent in the sense that in both cases it was found that the discovery date, at the latest supportable point in time, was more than two years prior to the filing of the action. Thus, the actions were filed untimely.

Our reading of the recent en banc decision of this court reaffirms our decision here. In *Levenson v. Souser,* 384 Pa.Super. 132, 557 A.2d 1081 (1987) we stated:

> The now generally accepted formulation of the discovery rule provides that the discovery rule *prevents the statute of limitations from running* against the plaintiff *until* the plaintiff knows or reasonably should know (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct.

(384 Pa.Superior Ct. at 144, 557 A.2d at 1086). Perhaps more important to our decision here was the discussion of application of the discovery rule to informed consent cases. In this regard we state:

> Since under the *Cathcart* formulation of the discovery rule, the statute of limitations *does not begin to run* until the plaintiff has or reasonably could have discovered both the injury and that it was caused by the act of a third party, the statute of limitations applicable to a lack of informed consent action cannot begin to run until plaintiff did or reasonably could have discovered that the medical

---

priate to intermix the discussion on these two related but substantially different situations.

procedure has caused an injury of which the plaintiff was not warned.

(Id., 384 Pa.Superior Ct. at 147, 557 A.2d at 1088).

Thus, it is clear that as the rule has been interpreted and applied one is given a full two years from the date he or she has acquired actual or imputed knowledge of the two operative facts discussed in *Cathcart* regardless of when these facts are ascertained.

Reviewing the trial court's opinion it is apparent that the trial court found the discovery rule inapplicable because the discovery date was within a two year period after the first surgery. There is no finding as to when that discovery date was so as to allow a determination of the timeliness of the action. Nor did the trial court reach the other issues raised in the post-trial motions. Consequently, we vacate the order entering judgment n.o.v. and remand for proceedings consistent with this opinion.

Order vacated, remanded for further proceedings. Jurisdiction relinquished.

TAMILIA, J., concurs in the result.